HAMMOCK *v.* SIMS.

1. APPEAL AND ERROR—MISSTATEMENT OF TESTIMONY BY COURT.
    It is reversible error for a court to misstate, although inadvertently, testimony regarding an important question of fact that it is necessary for plaintiff to establish.

2. SAME — AUTOMOBILES — PEDESTRIANS — MISSTATEMENT OF TESTIMONY BY COURT.
    In pedestrian's action against owner of truck for injuries sustained at 6 p.m. late in January while plaintiff was crossing a street, where gist of plaintiff's claim of negligence on the part of defendant's driver was that he had driven too fast in view of weather conditions and had skidded into plaintiff in the middle of a slippery street, it was reversible error for court while plaintiff was being interrogated on redirect examination to misstate plaintiff's testimony as to speed of defendant's driver which had been elicited on direct examination.

3. EVIDENCE—PEDESTRIANS—SPEED OF DEFENDANT'S TRUCK—CREDIBILITY.
    Where plaintiff pedestrian had testified on direct examination as to speed of defendant's truck as it approached her while she was crossing a slippery street at 6 p.m. late in January, and such testimony had been referred to on cross-examination, it was error to exclude her opinion testimony on redirect examination as to the speed of the truck, the weight and credibility of her testimony being for the jury.

4. AUTOMOBILES—SPEED—INSTRUCTIONS—EVIDENCE.
    In pedestrian's action for personal injuries sustained when hit by defendant's truck, it was error to charge jury there was no evidence that defendant's truck was being driven at an unlawful or reckless rate of speed, where there was testimony that it was being driven at an unlawful or a reckless rate of speed in view of weather conditions even though its speed was less than the legal maximum rate.

Negligence of defendant a question of fact for the jury, see 2 Restatement, Torts, § 434, comment c; standard of conduct defined, §§ 283–285; causal relation between harm and negligence, § 465.

5. APPEAL AND ERROR—RECORD—CERTIFICATE OF TRIAL JUDGE—STATE-
   MENT SIGNED BY COURT REPORTER.
   The record certified by the trial judge may not be supplemented
   by statements signed by the court reporter and such uncerti-
   fied statements will not be given any weight on appeal (Court
   Rule No. 66, § 14 [1945]).

Appeal from Wayne; Toms (Robert M.), J. Sub-
mitted October 5, 1945. (Docket No. 18, Calendar
No. 43,071.) Decided January 7, 1946.

Case by Henrietta Hammock against Bertha Sims,
administratrix of the estate of Irvin Sims, doing
business as Central Packing House Market, for per-
sonal injuries sustained when she was struck by de-
fendant's truck. Verdict and judgment for defend-
ant. Plaintiff appeals. Reversed and new trial
granted.

*Seymour Tilchin* and *William Banks,* for plain-
tiff.

*Howard D. Brown* (*Louis M. Dyll,* of counsel),
for defendant.

BOYLES, J. Plaintiff appeals from a judgment en-
tered for defendant upon a verdict by jury in a per-
sonal injury automobile damage suit. Plaintiff seeks
reversal and a new trial on the ground that errors
were committed in several particulars during the
trial, which may be grouped as follows: (1) Errors
in admitting or excluding testimony; (2) errors in
charging the jury; (3) error in denying plaintiff's
motion for a new trial. While the usual questions as
to defendant's negligence and plaintiff's contribu-
tory negligence are not involved in the appeal, a
short statement of facts is necessary for a proper
consideration of the grounds urged for reversal.

The accident occurred at the intersection of Hastings and Winder streets in Detroit. Hastings street runs north and south, 28 feet wide at this intersection, with a single streetcar track in the center. Winder street runs east and west. The accident occurred at about 6 p.m. on January 24, 1942. The plaintiff testified that she had alighted from a streetcar northbound on Hastings street just south of the Winder street intersection, walked east to about the southeast corner of the intersection and stopped at the curb; that she looked and saw no traffic, walked back west to the streetcar track in the center of Hastings street, looked north and saw the defendant's truck approaching from the north on Hastings street on its own (west) side of the street about half a block away. The plaintiff testified that:

"The closer it got to me, it was coming in to me so that made me step back, try to get back a little further. When I saw it it was not on the streetcar track, but over near the west curb. It was close enough it went on by me and not hit me, but it got to sliding."

Plaintiff then testified that she stepped back on the streetcar track but that the defendant's truck skidded and struck her there.

It is admitted that the plaintiff was run into by the truck and injured. An issue of fact was raised as to just where plaintiff was at the time she was struck. The driver of the truck and a disinterested witness to the accident both testified that the accident occurred close to the west curb, not on or near the streetcar track in the center. In answer to a special question the jury found that the accident took place on the west half of Hastings street, and found the defendant not guilty of negligence.

The principal grounds urged by plaintiff for reversal are that the court erred in excluding testi-

mony as to the speed of defendant's truck under the circumstances of the case, that in charging the jury the court was mistaken as to the testimony in that regard, and that the court erred in his charge to the jury by eliminating the issue of fact as to the speed of the truck.

In her amended declaration the plaintiff alleged:

"(6) That it was the duty of the defendant herein through his agents and employees * * * to operate the said automobile or vehicle at a careful speed, not greater nor less than reasonable and proper, having due regard to the traffic, surface, atmospheric and weather conditions and of other conditions then existing; * * *

"(10) That * * * the negligence of the defendant herein specifically consisted of the following violations: * * *

"(b) Operating the same in a careless, reckless manner without regard to weather conditions and the right of other persons on the highway. * * *

"(d) Operating his automobile at a rate of speed unsafe in view of weather conditions."

The defendant's answer specifically denied these allegations and an issue of fact was thus raised by the pleadings in the case.

On direct examination the plaintiff testified:

"When I got about the center of the street I looked down, looked north and I see this truck coming. Being slippery I didn't think I could make it across, I stood still. Well, he was over next to the curb. Well, when he got very near on me it seemed like to me he was going toward me. I backs a little farther and by that time I run around back where I come from, but I couldn't. I tried to run back where I came from. I looked around and the car hit me going back. There was no way to prevent it much. When I first saw him, he was about a half a block away. When I first saw him half a block I was pro-

ceeding in the middle of the car line. When I looked I saw him and stood, because it seems as though he was coming on me a little faster than I could make it across the slippery street.''

On cross-examination she testified:

''The truck was a half block away—that is, in the middle of the street, between Winder street and the next street north. The truck was a half block, plus the entire width of Winder street, plus the part of the sidewalk away from me.

"*Q.* You say you were afraid to go those 14 feet?

"*A.* Yes, it looked like it was advancing on me too fast to be a slippery night.

"*Q.* You saw it the first time it was half a block away while you stood there. How long did you stop and watch it?

"*A.* Well, I watched it until it got—I wouldn't know just the distance it got to me, but I can't bear back. I see it was sliding, it was sliding.

"*Q.* Mrs. Hammock, what were the conditions of the ice and the snow and the rain that you say that wouldn't permit you to try to go that 14 feet to the sidewalk?

"*A.* It was raining and the streets were slippery.

"*Q.* It wasn't icy, was it?

"*A.* Yes, icy.

"*Q.* Raining at the time?

"*A.* Yes.

"*Q.* Was it all ice so it was all very slippery?

"*A.* It was very slippery out there. * * *

"*A.* * * * I didn't attempt to go to the sidewalk, seeing this truck coming. The truck was advancing faster on me than I could go, maybe I would slip down. * * *

"*Q.* Under ordinary conditions of a dry pavement you could easily have reached the westerly curb from the center line of the street when you first discovered the truck a half block away, could you not, Mrs. Hammock?

"*A.* Well, the truck seemed to be advancing so fast I wouldn't have taken no chance, under circumstances of a dry street or wet street the way the car was advancing."

The following occurred on redirect examination of plaintiff:

"*Q.* You say you couldn't cross the street because the car was advancing on you, is that right, was advancing on you fast?

"*A.* Yes.

"*Q.* How fast would you say the car was advancing at the time—wait a minute; at the time you were standing in the middle of the intersection; how fast would you say the car was advancing on you, if you know?

"*Mr. Dyll* (attorney for defendant): I will object to that until the witness is qualified, and secondly, until you get evidentiary facts showing an ability on the part of this witness to make an answer to that.

"*The Court:* Objection sustained. In addition, it has already been answered.

"*Mr. Tilchin* (attorney for plaintiff): To the speed, your honor? I am sorry, I didn't get the second part of the court's ruling.

"*The Court:* I will sustain it on the ground upon which the objection was made, the witness has not been qualified to give her judgment of speed.

"*Q.* Have you ever ridden in a car, Mrs. Hammock?

"*A.* Yes, I have ridden in a car. * * *

"*Q.* Have you also observed cars travelling on the streets?

"*A.* Yes, I have been riding in them, I been looking at the little watch go around at the time.

"*Q.* As a result you feel you can judge the speed of a car?

"*A.* Well, I do.

"*Q.* How fast would you say this particular car was advancing upon you, at the time you stood at the middle of the tracks?

"*Mr. Dyll:* Just one moment, please. I will object to that. This witness has certainly not been qualified to answer that question.

"*The Court:* Objection sustained. Have you forgotten this witness' testimony on direct examination on this point?

"*Mr. Tilchin:* I don't remember off-hand, your honor.

"*The Court:* You didn't get the speed in miles per hour. *She said the car was approaching, but not very fast; he wasn't going very fast.* I don't think you can—well, I sustain the objection to the present question upon the ground that she is not qualified to give the speed of a car in miles per hour.

"*Q.* Let me ask you this question then: Do you know whether the car was going faster than what you normally observe cars to travel?

"*Mr. Dyll:* Just a minute. I will object to that, first, upon the grounds that there is no normal established speed. The premise is improper. She is asked now to make a comparison with an unknown condition and which the jury couldn't test. And third, it hasn't been shown she watched the car long enough to sustain any opinion on that point.

"*The Court:* Objection sustained. The legal rate of speed in this city on Hastings and Winder at the time, was 25 miles an hour.

"*Q.* Do you know whether this car at the time it was approaching, traveled faster than 25 miles an hour?

"*Mr. Dyll:* I will object to that as being another way to get around the ruling of this court. This witness hasn't qualified on the established rate of speed.

"*The Court:* A very obvious intent to circumvent the ruling of the court. Objection sustained. * * *

"*Q.* Now, Mrs. Hammock, you stated that you have driven in cars and that you observed speedometers, is that right; you observed the speed of cars?

"*A.* Oh, yes, I have looked at them on the cars when I would be riding.

"*Q.* Would you say that you observed the exact mileage these cars traveled?

"*A.* Well, yes, I would say.

"*Q.* Do you feel that you can judge the speed of a car by observing it, from your experience?

"*A.* Yes, I can. \* \* \*

"*The Court:* Do you drive a car yourself, Mrs. Hammock?

"*A.* No, I don't drive.

"*The Court:* There being the further objection that this is part of the examination in chief. This is part of proving your case, not rebuttal. Nothing was brought out by the defense in its examination with reference to speed. This testimony, if admissible at all, is properly part of your examination in chief. That is one ground for sustaining the objection. The other is: The witness has not been qualified to express an opinion, so the objection will be sustained on those two grounds.

"*Mr. Tilchin:* If the court please, the question on cross-examination was asked as to whether 'you could have made it if the street hadn't been icy,' and she said, 'No, the car was advancing too fast on me.' I am trying to establish how fast the car was advancing on her to see if she was guilty of negligence or not. I think it is proper questioning at this time of contributory negligence.

"*The Court:* In doing what?

"*Mr. Tilchin:* In standing where she was or not crossing, or whether she might have done something else instead. I think it becomes material at this time.

"*The Court:* I don't think so.

"*Mr. Tilchin:* As I understand it now, I am not allowed to bring any question of speed in there?

"*The Court:* I just sustained the objection to the last question. I don't make any shotgun rulings."

Plaintiff was then allowed to testify further, without objection, that she had ridden in a car from the

year 1933 to the time of the trial around 15 or 20 times a month, 8 or 10 times in the front seat of the car, had observed the speedometer, had observed cars traveling toward her and judged their speed, after which the court again sustained an objection to her answering how fast the defendant's truck was traveling at the time she was standing in the middle of the street.

The gist of plaintiff's claim of negligence on the part of the defendant was that the defendant's driver had operated the vehicle at a rate of speed unsafe in view of weather conditions and that it had skidded into plaintiff in the middle of a slippery street. Plaintiff had so testified, in effect, on direct examination. The same issue was again brought up by defendant's counsel on cross-examination of the plaintiff. On her redirect examination the court was mistaken when the court stated:

"She said the car was approaching, but not very fast; he wasn't going very fast."

Plaintiff had not so testified. It is reversible error for the court to misstate, although inadvertently, testimony regarding an important question of fact that it is necessary for the plaintiff to establish. *Wilkinson* v. *City of Grand Rapids*, 228 Mich. 120; *Lord* v. *Winningham*, 307 Mich. 300. On her redirect examination her testimony should have been received as to the speed of defendant's truck. Such testimony had been admitted on her direct examination and referred to on cross-examination and the court was in error in excluding her opinion on redirect examination as to the speed of the truck, the weight and credibility of her testimony being for the jury. *Beaubien* v. *Railway*, 216 Mich. 391, 395; *Zylstra* v. *Graham*, 244 Mich. 319, 326; *Jenks* v. *County of Ing-*

*ham,* 288 Mich. 600, 607; *Gibbons* v. *Delta Contracting Co.,* 301 Mich. 638, 650.

The court, in charging the jury, said:

"I charge you that there is no evidence in this case that the defendant's car was being driven at an unlawful or a reckless rate of speed. So that is not one of the factors of negligence which is in controversy here."

It was error to charge the jury that there was no evidence in the case that the defendant's car was being driven at an unlawful or a reckless rate of speed. Under the testimony adduced as to the time when the accident occurred and the slippery condition of the street, the driver might be guilty of negligence although the speed of the truck might be shown to be less than the legal maximum of 25 miles per hour. *Deyo* v. *Detroit Creamery Co.,* 257 Mich. 77, 83.

Other questions presented on this appeal are of such nature that they are unlikely to occur on a retrial and for that reason need not be discussed. Incidentally, the attempt of counsel for each party to supplement the certified record by statements signed by the court reporter, and not certified to by the trial judge, will not be given any weight on the appeal. Court Rule No. 66, § 14 (1945).

The judgment is set aside and a new trial granted, with costs to appellant.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and STARR, JJ., concurred.