[Crim. No. 5305.   In Bank.   Aug. 26, 1952.]

THE PEOPLE, Respondent, v. WILLIAM EDWARD COOK, Appellant.

John Connolly for Appellant.

Edmund G. Brown, Attorney General, Frank Richards, Deputy Attorney General, and Don C. Bitler, District Attorney (Imperial), for Respondent.

GIBSON, C. J.—Defendant was indicted for the murder of Robert Dewey. He pleaded not guilty and not guilty by reason of insanity. Later he withdrew his plea of not guilty, and the sole issue at the trial was whether or not he was insane at the time he committed the homicide. The jury returned a verdict that he was sane. The court considered the evidence for the purpose of fixing the degree of the crime, found defendant guilty of murder in the first degree, and sentenced him to death. This appeal is taken automatically under section 1239 (b) of the Penal Code.

On the day of the homicide defendant kidnapped a deputy sheriff, bound him, left him at the side of the road and stole his car. Defendant used the red light on the deputy's car to stop an automobile driven by Dewey, and, at the point of a gun, forced Dewey to give him a ride. While they were in the car, defendant shot Dewey in the side, pushed him out of the door and then shot him a second time. Dewey was left lying in the road, and his dead body was discovered by the deputy sheriff a few hours later. Defendant then took Dewey's car into Mexico where he stopped another automobile and forced its two occupants to drive him around for several days until he was apprehended by the Mexican police.

When defendant was returned to this country he was taken into custody by federal officials upon the charge that he had kidnapped a family of five, consisting of father, mother and three children, and had killed them after transporting them from Oklahoma to Arkansas. He was convicted of violation of the Lindbergh Kidnapping Law (18 U.S.C.A. § 1201), given five consecutive sentences of sixty years, and incarcerated in Alcatraz Island Penitentiary, from which he was brought to Imperial County for the trial of the present case.

Defendant contends on this appeal, as one ground for reversal of the judgment, that he was denied due process of law, and in support of this claim he asserts that by ar-

rangement of the district attorney three alienists appointed by the trial court held ''an extrajudicial hearing'' at which various witnesses were examined without the presence of defendant or his counsel and that his right to be confronted with witnesses was abridged. The alienists were the superintendents of the state mental hospitals at Camarillo, Patton and Stockton, which are located at considerable distances from the place of trial. They were notified by the district attorney that certain witnesses and certain transcripts would be available on a specified date at El Centro, the county seat of Imperial County, and accordingly, as a matter of convenience, the doctors met at that time. They conducted the usual type of psychiatric examination which involved reading the grand jury transcript and Federal Bureau of Investigation reports, interviewing witnesses who had observed defendant's conduct, inquiring into his background and his behavior before and after the homicide, and then examining defendant. The district attorney informed the doctors of the nature of the case but did not discuss it with them in detail, neither he nor anyone from his office was present at the interviews, and his office was not informed of the doctors' findings before they took the witness stand. There is no showing that defendant was prevented from examining any witnesses interviewed by the alienists or that he was denied access to any documents which they considered. He was afforded full opportunity to cross-examine the doctors as to the basis for their opinions, and their testimony disclosed the manner in which they made their examination for the purpose of determining defendant's sanity. No objection was made to their testimony, and there was no motion to strike it. The record does not support the claims made by defendant or show that there was any denial of due process.

As another ground for reversal, defendant asserts that prior to the trial the district attorney aroused the prejudice of the people against him by making speeches about the case over the radio and at various civic meetings. Defendant did not move for a change of venue under section 1033 of the Penal Code, and he has not shown that he was unaware of the asserted facts upon which his claim is based at the time he might properly have made such a motion. Even if it be assumed that defendant has not waived his objection by his failure to move for a change of venue, the record does not support his position. There is no evidence that any of the jurors who tried the case heard the speeches

which were assertedly made. (See *People* v. *Chapman*, 93
Cal.App.2d 365, 372 [209 P.2d 121].) ▇ In fact, de-
fendant announced at the conclusion of the examination of
prospective jurors that he was satisfied with the jury and
did not wish to exhaust his peremptory challenges. (*Cf.
People* v. *Patterson*, 58 Cal.App.2d 837, 844 [138 P.2d 341].)
Under all the circumstances he is in no position to claim that
it was impossible for him to secure a fair trial by an unbiased
jury.

▇ The next contention is that the district attorney com-
mitted prejudicial error in his argument to the jury. As
noted above, defendant had previously been sentenced by
a federal court to five consecutive terms of 60 years each for
other offenses, and he complains that the district attorney
erroneously stated that defendant would be eligible for parole
under federal law after he has served 15 years.* Defendant
asserts that he will not be eligible for parole until he has
served 75 years, but he did not object to the district attor-
ney's statement when it was made and now raises the point
for the first time on appeal. Even if we assume that the
statement was incorrect, it is clear that any harmful effect
could have been cured by a proper instruction if timely ob-
jection had been made, and the asserted misconduct does
not, therefore, furnish grounds for reversal. (See *People*
v. *Sampsell*, 34 Cal.2d 757, 763-764 [214 P.2d 813]; *People*
v. *Berryman*, 6 Cal.2d 331, 337 [57 P.2d 136].)

▇ There is a conflict in the evidence as to defendant's
sanity at the time of the homicide. Testimony that he was
insane was given by two psychiatrists and a witness who was
acquainted with defendant for several years while she was
working as a probation officer. On the other hand, three
alienists appointed by the court testified that in their opinion
he was sane. In addition, there was testimony by several
witnesses as to defendant's declarations, acts and conduct
before and after the killing from which the jury could infer
that defendant knew what he was doing and knew the dif-
ference between right and wrong. The verdict that he was
sane at the time of the homicide is amply supported by the
evidence. ▇ The killing was committed in the perpetra-
tion of robbery, and, therefore, by the definition of the crime,

---

*18 U.S.C.A. § 4202 [Supp. 1951], provides: "A Federal prisoner
. . . serving a definite term or terms . . . may be released on parole
after serving one-third of such term or terms or after serving fifteen
years of a life sentence or of a sentence over forty-five years."

was murder of the first degree, and we cannot say that there was any abuse of discretion in imposing the death penalty. (See Pen. Code, §§ 189, 190, 1026.)

The judgment and order denying a new trial are affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied September 25, 1952.