PEOPLE v BUSCHARD

Docket No. 49873. Submitted June 1, 1981, at Grand Rapids.—Decided September 9, 1981. Leave to appeal applied for.

Glananard Buschard was convicted of carrying a weapon in a motor vehicle following a jury trial in Berrien Circuit Court, Zoe S. Burkholz, J. Defendant thereafter pled guilty to being a second offender. Defendant appeals asserting that reversible error occurred as a result of: (1) the admission of hearsay statements of a police informer, (2) the failure of the prosecution to endorse and call as witnesses the informer and other persons, (3) the admission into evidence of the fact that his accomplices had pled guilty and that as part of their plea agreement had promised to testify truthfully, (4) the fact that the prosecution's closing arguments vouched for the credibility of the accomplices' testimony, (5) the fact that insufficient evidence was presented at the preliminary examination to warrant binding over on the crime charged, and (6) the fact that defendant had been subjected to an illegal search and seizure. *Held:*

1. The statement made to the police by the nontestifying informant was not offered to prove the truth of the matter asserted but was rather to establish the motive for the police officers' stopping of the vehicle in which the defendant was riding. While such testimony was thus not inadmissible hearsay, the statement was irrelevant since the motive of the police was not at issue. However, it was not reversible error to admit the testimony since no objection was raised below and the admission of the testimony did not result in manifest injustice.

2. The issue of whether the prosecution should have endorsed and called the informant and certain other persons is not properly before the Court of Appeals, since defendant failed to

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 7] 5 Am Jur 2d, Appeal and Error § 545.
[2] 29 Am Jur 2d, Evidence §§ 493, 497.
[3] 29 Am Jur 2d, Evidence §§ 249, 251.
[5] 21 Am Jur 2d, Criminal Law § 481.
   81 Am Jur 2d, Witnesses § 498.
[6] 21 Am Jur 2d, Criminal Law § 481.

preserve the question for appellate review by a motion in the trial court nor has manifest injustice been shown which would mandate reversal in the absence of proper preservation of the issue.

3. While the fact that an accomplice has pleaded guilty is generally inadmissible because of the danger that the jury will infer from the knowledge of such plea that the defendant on trial is guilty, reversible error does not necessarily occur where the prosecution anticipates the cross-examination of an accomplice witness and raises the issue of the accomplice's plea bargain on direct examination.

4. While great caution must be exercised in the admission of evidence of plea-bargaining agreements of accomplices which contain a promise by the accomplice to testify truthfully, the admission into evidence of such agreements is not in itself erroneous and reference to it by the prosecution in its final argument does not necessarily constitute prosecutorial vouching mandating reversal. The admission of such evidence only constitutes reversible error where the prosecution uses such evidence to suggest that the government has some special knowledge unknown to the jury that the witness is testifying truthfully. The closing arguments of the prosecution in the instant case did not constitute impermissible vouching and any error which might have resulted could have been eliminated by a curative instruction had an objection been made at trial.

5. Not only is the issue of the sufficiency of the evidence at the preliminary examination not preserved for appellate review by a motion to quash before the trial court, but also the evidence presented, together with the permissible inferences which could be drawn from that evidence, was sufficient to bind the defendant on the charged crime of carrying a weapon in an automobile.

6. The police officers properly made an investigatory stop of the automobile in which the defendant was riding on the basis of the informant's tip. The gun was then in plain view of the officers. Defendant's arrest and the seizure of the gun, accordingly, were proper under the circumstances.

Affirmed.

1. APPEAL — CRIMINAL LAW — PRESERVING QUESTION.

Failure to raise objections in the trial court will generally preclude appellate review; however, claims or error may be reviewed by the Court of Appeals in order to avoid manifest injustice.

2. CRIMINAL LAW — EVIDENCE — HEARSAY — RULES OF EVIDENCE.

The out-of-court statement of a police informant which is not offered to prove the truth of the matter asserted but rather to explain the reason for the actions undertaken by the police is not inadmissible hearsay (MRE 801[c]).

3. CRIMINAL LAW — EVIDENCE — RELEVANCY.

It is error to admit into evidence testimony which is not relevant, however, the error in admitting irrelevant evidence does not constitute reversible error where there was no objection at the trial court level and where, because of testimony's cumulative nature, the admission of that testimony did not result in manifest injustice.

4. APPEAL — CRIMINAL LAW — RES GESTAE WITNESSES — PRESERVING QUESTION.

Failure to move during trial for a hearing or to make a post-trial motion for a new trial on the basis of the prosecution's failure to endorse and produce res gestae witnesses will preclude appellate review of that issue unless manifest injustice will result from the refusal to undertake such appellate review.

5. CRIMINAL LAW — EVIDENCE — ACCOMPLICES — GUILTY PLEAS.

The fact that an accomplice pleaded guilty is generally inadmissible in a trial of the other accomplice; however, it is not necessarily reversible error for the prosecution to anticipate the cross-examination of the accomplice witness and to raise the issue of the accomplice's plea bargain in direct examination of that witness.

6. CRIMINAL LAW — WITNESSES — PLEA BARGAIN — PROSECUTORIAL VOUCHING.

The admission into evidence of a plea-bargain agreement of a testifying accomplice which contains a promise by the accomplice to testify truthfully is not in itself erroneous and reference to it by the prosecution in its final argument does not necessarily constitute prosecutorial vouching mandating reversal; rather, although such agreements should be admitted into evidence with great caution, the admission of such evidence constitutes reversible error only where the prosecution uses that evidence to suggest that the government has knowledge not known to the jury that the accomplice is testifying truthfully.

7. APPEAL — CRIMINAL LAW — PRELIMINARY EXAMINATION — PRESERVING QUESTION.

The failure to file in the trial court a motion to quash waives any

error which might have occurred in the binding over at the preliminary examination.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people.

*Susan J. Smith,* Assistant State Appellate Defender, for defendant on appeal.

Before: R. B. BURNS, P.J., and ALLEN and T. GILLESPIE,* JJ.

ALLEN, J. Defendant was convicted by a jury of carrying a weapon in a motor vehicle, MCL 750.227; MSA 28.424. He also pleaded guilty to being a second time felony offender, MCL 769.10; MSA 28.1082. He was sentenced to three to seven and a half years in prison and appeals as of right.

On May 30, 1979, police officers, responding to a tip, stopped a car in which defendant was a passenger and asked for defendant by name. All three occupants offered identification and exited from the car. Police said defendant, the only passenger in the back seat, had been sitting on a .357 magnum revolver.

Sam Stueland, the front seat passenger, told police the gun was his. Defendant denied any knowledge of the gun, stating he was having severe chest pains and was oblivious to his surroundings. Defendant was arrested. The car's driver, Greg Shafer, and Stueland were allowed to leave, although they were later told they could be charged with carrying a weapon in a vehicle.

Both accomplices testified at trial pursuant to a plea agreement that allowed them to plead guilty

* Circuit judge, sitting on the Court of Appeals by assignment.

to a misdemeanor charge, as opposed to the felony with which defendant was charged. Stueland and Shafer testified that they came to Benton Harbor on May 30, 1979, on an amateur detective investigation, trying to find Stueland's stereo which had been stolen two weeks earlier. In so doing, they stopped at several bars. Stueland testified that he placed his gun in the car's trunk and both Stueland and Shafer testified that they did not see the gun again that evening until the police stopped the car.

Defendant testified that he was with Shafer and Stueland but denied having any knowledge of the gun. He testified that when the car was stopped by police he was having an angina attack and did not notice his surroundings.

On appeal defendant raises five issues, none of which was preserved for appellate review by an objection at the trial level. Failure to object at trial prevents the trial court from correcting any possible error and may result in the waste and delay of a new trial. Generally, failure to object precludes appellate review. We will nevertheless review defendant's claims of error to avoid manifest injustice. *People v Provience,* 103 Mich App 69, 72; 302 NW2d 330 (1981).

Defendant first argues that he was denied a fair trial when a police officer testified that an informant told him one passenger in the car in which defendant was riding was carrying a gun. The officer testified that early on May 30, 1979, he stopped a white 1967 Camaro. The prosecutor asked if he recalled why and the officer replied:

"I had received information from a street informant of a subject in the vehicle carrying a gun."

The officer said he asked the occupants for identification because he "was looking for a particular individual named Buschard". The informant did not testify at trial.

Defendant argues that this response constituted inadmissible hearsay. We cannot agree. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. MRE 801(c). When examined in its context, it is clear the question was asked as background to determine the motive for stopping the Shafer vehicle, not to prove the veracity of the informant's tip. *People v Eady*, 409 Mich 356, 361; 294 NW2d 202 (1980).

Even if the statement did not constitute inadmissible hearsay, it should not have been admitted unless relevant. *People v Wilkins*, 408 Mich 69; 288 NW2d 583 (1980). Evidence of an informant's tip could be admissible to demonstrate the police officer's motivation in stopping the car, if such motives were relevant to an issue in the case. *Eady, supra*, 361. In the case at bar, however, motivation was not an issue, nor can we find any other relevance to this information.

We also note that testimony about the undisclosed informant's tip violated defendant's Sixth Amendment right to confront the witnesses against him. *People v Harris*, 41 Mich App 389, 391; 200 NW2d 349 (1972).

We conclude that had defendant objected to the irrelevant testimony regarding the informant's tip, the trial court should have excluded it. We find, however, that admission of this evidence did not result in reversible error. In so doing, we recognize that a jury might infer from the informant's tip that defendant had knowledge of the gun. This knowledge was also established by the direct testimony of both accomplices and by defendant's prox-

imity to the gun when stopped by police. This unobjected to testimony was merely cumulative and did not result in manifest injustice.

Defendant next argues that the prosecution should have endorsed and produced the informant and other persons in the bar where defendant allegedly had the gun. Generally, the prosecution is required to endorse and produce at trial all res gestae witnesses. MCL 767.40; MSA 28.980. A res gestae witness is one "who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense". *People v Hadley,* 67 Mich App 688, 690; 242 NW2d 32 (1976). A person need not be an actual eyewitness to be presumed to be a res gestae witness; it is enough that his or her testimony would aid in developing a full disclosure of the facts. *People v Abdo,* 81 Mich App 635, 643-644; 265 NW2d 779 (1978). It is possible that the bar patrons in the instant case may have been able to offer such information.

A defendant, however, bears the responsibility of moving for a hearing during trial, or for a new trial, before claiming on appeal that the prosecution has failed to endorse and produce a res gestae witness. *People v LeFlore,* 96 Mich App 557, 563-564; 293 NW2d 628 (1980). Failure to move for either will preclude appellate review unless manifest injustice will result. *People v Pearson,* 404 Mich 698, 723; 273 NW2d 856 (1979), *LeFlore, supra.*

We do not believe manifest injustice occurred in the present case. Even if the prosecution had produced bar patrons who testified that defendant carried no gun in the bar, their testimony would

have been consistent with that of defendant's accomplices, who said they did not see the gun after placing it in the car trunk. Moreover, defendant's knowledge of the gun was established by his proximity to the gun when the car was stopped by police. This fact was the basis of the prosecution's argument that defendant had knowledge of the gun; the testimony of the bar patrons could not have refuted this. We conclude that, even if the bar patrons were res gestae witnesses, defendant waived any error in their nonproduction.

Defendant next argues that he was denied a fair trial because the prosecutor introduced evidence that the accomplices promised to testify truthfully at defendant's trial in return for being charged with a misdemeanor firearm offense. Generally, the fact that a codefendant pleaded guilty is inadmissible as there is a danger that a jury will infer a defendant's guilt from that plea. Anno: *Prejudicial effect of prosecuting attorney's argument or disclosure during trial that another defendant has been convicted or has pleaded guilty,* 48 ALR2d 1016, *People v Lytal,* 96 Mich App 140, 159; 292 NW2d 498 (1980), *lv gtd* 409 Mich 923 (1980). The prosecution does have a duty to disclose promises made in return for testimony on a defendant's request or if false testimony is presented. *People v Atkins,* 397 Mich 163, 173; 243 NW2d 292 (1976). It is not necessarily reversible error for the prosecution to anticipate the cross-examination of an accomplice witness and raise the issue of an accomplice's plea bargain in direct examination. *Lytal, supra,* 157.

In the case at bar, the prosecution's questions went beyond mere disclosure of the fact that a plea agreement had been reached. Here the prosecutor asked each accomplice if he had agreed to

testify *truthfully.* No Michigan case has considered whether the disclosure of an agreement to testify truthfully is permissible.

Other jurisdictions are divided over whether such evidence constitutes reversible error. In *United States v Koss,* 506 F2d 1103 (CA 2, 1974), *cert den sub nom Layne v United States,* 420 US 997; 95 S Ct 1402; 43 L Ed 2d 657 (1975), the second circuit held that the text of a plea agreement, which included a provision that the accomplice would be liable for all crimes if he committed perjury, was admissible on redirect examination of an accomplice in order to rehabilitate the witness. In *United States v Creamer,* 555 F2d 612, 617-618 (CA 7, 1977), the seventh circuit rejected a defendant's argument that reference to an agreement to testify truthfully constituted impermissible prosecutorial vouching. The court found this was not an overt statement of personal belief in the witness's veracity, and found no error. In *United States v Roberts,* 618 F2d 530 (CA 9, 1980), the ninth circuit held that reference to a policeman sitting in the courtroom was impermissible when the prosecutor suggested the policeman was monitoring testimony to determine if a conspirator was testifying truthfully. In dicta, the court found that reference in argument to a promise to testify truthfully may be, but not necessarily is, error. The court suggested the application of a balancing test before admitting a plea agreement containing a reference to a promise of truthfulness.

"A strong case can be made for excluding a plea agreement promise of truthfulness. The witness, who would otherwise seem untrustworthy, may appear to have been compelled by the prosecutor's threats and promises to come forward and be truthful. The suggestion is that the prosecutor is forcing the truth from his

witness and the unspoken message is that the prose-
cutor knows what the truth is and is assuring its
revelation.

*  *  *

"A trial court should be alert to the problem of
vouching before admitting a plea agreement containing
a promise to testify truthfully. The court should con-
sider the phrasing and content of the promise to ascer-
tain its implications and decide whether an instruction
to the jury would dispel any improper suggestions.

*"USING THE PROMISE IN ARGUMENT*

"In addressing the third issue we consider the use
which a prosecutor may make of a promise to testify
truthfully once a plea agreement has been admitted.

"The prosecutor may not tell the jury that the gov-
ernment has confirmed a witness's credibility before
using him. *Gradsky v United States, supra.* He should
be no more able to indicate that the government has
taken steps to compel the witness to be truthful. Both
of these arguments involve improper vouching because
they invite the jury to rely on the government's assess-
ment that the witness is testifying truthfully." *Roberts,
supra,* 536.

The most recent relevant case is *United States v
Hedman,* 630 F2d 1184 (CA 7, 1980). Defendants
challenged the admissibility of testimony elicited
by the government on direct examination of three
company employees that they had been granted
immunity. Defendants claimed that the testimony
was inadmissible because it was used to enhance
the credibility of the witnesses. The court rejected
the argument saying:

" 'We find nothing improper about the question of the
witness' understanding of the terms of the immunity
order in this case. There was no insinuation by the
prosecutor, direct or otherwise, that the government
possessed knowledge to the exclusion of the jury on the
issue of the immunized witness' veracity. *Cf. United*

*States v Creamer,* 355 F2d 612 (CA 7, 1977). Further, we believe that the jury's function of assessing credibility and weighing testimony is aided by evidence of an immunized witness' understanding of the terms under which he or she is testifying. Indeed, such questions by the prosecution frequently provide a convenient opening for more exploration of a fertile area on cross-examination.' *[United States v Craig,* 573 F2d 513, 519 (CA 7, 1978)]. We are aware of no persuasive authority to the contrary. The testimony concerning immunity in this case fails to reflect an implication that the government possessed knowledge to the exclusion of the jury on the issue of the immunized witnesses' veracity. *Moreover, the trial court instructed the jury that the credibility of the immunized witnesses was susceptible to special scrutiny."* *Hedman, supra,* 1198. (Emphasis supplied.)

Based upon the state and federal decision cited above, we cannot hold that *any reference* to a plea agreement containing a promise of truthfulness is *in itself* grounds for reversal. A more accurate statement of the law appears to be that, although such agreements should be admitted with great caution, admissibility of such an agreement is not necessarily error unless it is used by the prosecution to suggest that the government had some special knowledge, not known to the jury, that the witness was testifying truthfully. In this connection, we note that *Roberts, supra,* was a much stronger case for the defendant than the situation in the case at bar. *Roberts* contained testimony of both an agreement to testify truthfully and in addition, over objection of defense counsel, testimony that the government had a detective sitting in court auditing the witness's testimony to insure its truthfulness. It was this latter testimony, and not the fact that the agreement contained the promise to testify truthfully, that caused the *Rob-*

*erts* court to reverse.[1] Accordingly, we conclude that it is not the testimony that the accomplices agreed to testify truthfully that would constitute error in the instant case. The only question is whether the prosecution's use of such testimony constitutes grounds for reversal.

In his closing argument to the jury, the prosecutor made no reference to the plea agreement. However, the prosecutor made the following remarks, the emphasized portions of which defendant claims constitute error:

"The judge will instruct you with regard to accomplices' testimony, and that is what Mr. Shafer and Mr. Stueland really are, they are accomplices to carrying that gun in the car, you should judge their testimony carefully. That is obvious to you, I am sure, if a person is promised something in exchange for testifying or if they tell it in such a way that they obviously have a motive for keeping their own involvement down and playing up somebody else's involvement, that should be judged. *But I submit to you in this case it is not the case. The men have been very candid.* They have admitted they were possessing or carrying a pistol in the car. In fact, Mr. Stueland and Mr. Shafer, what reason would they have for saying as they did that they didn't put that gun anywhere but in the trunk, and that Mr. Buschard was involved in putting it in the passenger compartment and getting it underneath himself when they were stopped. If you will, their motive, if they wanted to—I mean what would they have? They have already admitted it. If it was the truth, that they somehow put it in there and as Mr. Banyon alleges, then it would be easier for them to say, yes, I put it in there. It doesn't make any difference for their purposes that it is in the trunk or the passenger compartment or

---

[1] "This court held [in *United States v Roberts,* 618 F2d 530 (CA 9, 1980)] that the prosecutor committed reversible error when, over an objection sustained by the court, he attempted to bolster the credibility of the chief prosecution witness with evidence outside the record." *United States v Roberts,* 640 F2d 225, 226 (CA 9, 1981).

wherever. *But they are telling you the way it happened because that is all they know about it.*

"Now, they are going to testify that they have been allowed to plead to a misdemeanor. That you may consider also. But, that alone. *They have been promised nothing about the sentence* and they have testified before you here today. I submit to you when you take their testimony coupled with the officers' testimony, the exhibits and all of the testimony, that it together with all of it should indicate to you that the defendant should be held accountable for the crime which he is charged and that he denies he has any involvement with." (Emphasis supplied.)

We disagree on four grounds. First, in the case at bar no objection to the prosecutor's argument was made and a curative instruction was not requested. Second, the prosecution made no reference to steps taken by the prosecution to insure that the witness would testify truthfully. Third, the trial judge did instruct the jury that the testimony of accomplices should be viewed with skepticism. That instruction was not brief or casual but consisted of more than one page of transcript and included a statement that the jury should consider whether the accomplices testified falsely in order to place guilt upon the defendant.[2] Fourth, read in its entirety the statement appears to be a statement of the prosecutor's conclusion that the accomplices' testimony "coupled with the

---

[2] "You may consider whether the testimony was affected by either of them being granted immunity from punishment or from receiving a promise of leniency or being allowed to plead guilty to a lesser offense. You may consider whether the testimony is falsely slanted in such a way as to place guilt upon the defendant in order to further the witness' own interest or any other bias or motive which may have prompted or induced the witness in his testimony. You should also consider how each of those witnesses impressed you with his appearance upon the witness stand. And so to summarize, you should examine an accomplice's testimony with greater care than you would use to examine the testimony of an ordinary witness. It should be carefully and closely examined before a conviction is based upon it."

officers' testimony, the exhibits and all the testimony, that it together" should indicate the defendant's guilt of the crime charged. We do not find such a statement impermissible vouching. We further find that any prejudice which might have resulted could easily have been eliminated had a curative instruction been requested. Finally, we note that at the time of trial the decision in *Roberts, supra,* had not been announced,[3] and consequently the trial court was without benefit of its admonitions.

Defendant raises two additional arguments which we address briefly. Defendant maintains that inadequate evidence was presented at the preliminary examination to warrant the magistrate's decision to bind over on the charged offense. Any error that may have occurred in binding over was waived, as defendant filed no motion to quash. *People v Miller,* 62 Mich App 495; 233 NW2d 629 (1975). Moreover, we find that ample evidence of defendant's knowledge of the gun was presented, as the police testified at the preliminary examination that the defendant was sitting on the gun when arrested. This information was adequate to establish that the offense had been committed and there was probable cause to believe that the defendant had committed it. Guilty knowledge could be inferred from defendant's apparent attempt to conceal the gun. *People v Beets,* 105 Mich App 350; 306 NW2d 508 (1981). The magistrate did not abuse his discretion in binding defendant over for trial.

Finally, defendant argues that the stop of Shafer's car and the arrest of defendant violated defendant's Fourth Amendment protection against un-

---

[3] Defendant was convicted September 11, 1979, and *Roberts* was decided May 7, 1980.

reasonable searches and seizures. We believe that the investigatory stop of the automobile was reasonable, based on the informant's tip, which was verified by police observation. *People v Whalen,* 390 Mich 672, 682; 213 NW2d 116 (1973). Once the car was properly stopped, police observed a gun in plain view where defendant had been sitting. This provided probable cause for his arrest. There was no error in the initial stop or in defendant's arrest.

Affirmed.