# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MICHAEL PETER MURRAY,

       Defendant-Appellant.

UNPUBLISHED
October 21, 2014

No. 316279
Hillsdale Circuit Court
LC No. 13-372971-FC

Before: BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions for armed robbery, MCL 750.529; conspiracy to commit armed robbery, MCL 750.529 and MCL 750.157a; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and possession of a firearm by a felon, MCL 750.224f. On May 6, 2013, the trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 25 to 40 years' imprisonment for the armed robbery conviction; 25 to 40 years' imprisonment for the conspiracy to commit armed robbery conviction; 2 years' imprisonment for the felony firearm conviction; and 54 to 120 months' imprisonment for the possession of a firearm by a felon conviction. The trial court ordered defendant's sentence for the felony-firearm conviction to be served consecutively to the other three sentences. In addition, the trial court gave defendant credit for 157 days of time served for the felony-firearm conviction. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

According to the testimony of Eric Benson and Jill Cater, on November 29, 2012, they, along with defendant went to the apartment of Josh Rowell and Stacey Dotson. According to their testimony, Carter had information that Rowell had money and drugs in the apartment. Testimony about how the robbery transpired varied. Carter, who was romantically involved with defendant, denied planning to rob Rowell and testified that she had initially planned to do a controlled purchase of drugs from Rowell in her capacity as a confidential informant for the police. According to Carter, when no controlled buy was arranged, she nevertheless decided to go to Rowell's apartment because she believed Rowell was "romantically interested" in her and would give her money and drugs to pay fines, purchase an outfit for an upcoming court appearance, and get her nails done. Benson testified to the contrary that he, defendant, and Carter had devised a plan to rob Rowell at gunpoint.

-1-

Benson, Carter, and Rowell each testified that shortly after defendant, Benson, and Carter arrived at Rowell's apartment, they got high and watched television. Thereafter, Carter and defendant decided to go to a gas station to get cigarettes and something to drink. After being gone for approximately a half an hour, they returned to the apartment and defendant held a gun to the head or neck of Carter and demanded money from Rowell. Benson pointed a gun at Rowell and demanded money. Rowell told the men that he had given his money to Dotson for rent and he went towards Dotson's bedroom. Defendant followed, still holding the gun. When Dotson emerged from her bedroom, Carter told her that the men had guns. Dotson then ran into the bathroom, locked the door, and called the police. Defendant attempted to open the bathroom door, but when it became apparent that Dotson was talking to the police, defendant, Benson, and Carter fled the apartment. The jury convicted defendant as previously set forth and he was thereafter sentenced.

On May 21, 2013, defendant filed a motion for a new trial, alleging that the prosecution improperly vouched for the testimony of Carter and Benson, defendant's trial counsel was ineffective, the trial court improperly instructed the jury, the verdict was against the great weight of the evidence, and these errors deprived defendant of his constitutional due process right to a fair trial. Defendant argued that trial counsel failed to: (1) effectively impeach Carter and Benson with their prior inconsistent statements; (2) object to two improper jury instructions; (3) request an addict-informer instruction with regard to Carter; (4) adequately investigate the relationship between Carter and the police as it related to the robbery at issue; and (5) dispute the idea that defendant may have ingested morphine on the night in question. Defendant further argued that the trial court improperly instructed the jury when it indicated that the armed robbery charge was relevant to Rowell "and/or" Dotson and when it failed to identify Carter as an accomplice witness.

On October 9, 2013, the trial court held a hearing on defendant's motion for a new trial and a *Ginther*[1] hearing regarding defendant's claims of ineffective assistance of trial counsel. At the hearing, defendant's trial counsel testified with regard to the alleged instances of ineffective assistance of trial counsel. Following this testimony, the trial court addressed each of defendant's claims. First, the trial court found that there had been "no showing of ineffective assistance of [trial] counsel," and that the representation of trial counsel "did not fall below an objective standard of reasonableness." Second, the trial court rejected defendant's claim that the trial court improperly instructed the jury that it could consider the charge of armed robbery as it related to Rowell "and/or" Dotson and defendant's claim that the jury was not properly given an accomplice instruction with regard to Carter. Third, the trial court found that the prosecution did not commit misconduct. Finally, the trial court rejected defendant's claim that the verdict was against the great weight of the evidence and found that the evidence against defendant was "overwhelming." The trial court denied "all arguments for a new trial," this appeal then ensued.

On appeal, defendant first argues that the trial court erred when it instructed the jury that it could consider the crime of armed robbery with regard to Rowell "and/or" Dotson because this

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

violated defendant's right to a unanimous verdict. The prosecution argues that defendant waived this issue when he expressed satisfaction with the trial court's instruction. Record evidence supports the prosecution's argument.

Following the close of proofs, the trial court took a recess to go over instructions with trial counsel. The following exchange occurred immediately after the recess:

> *Trial Court.* The record should reflect that during the recess, we went over the jury instructions together and discussed those jury instructions, agreed upon the same, and also the proposed verdict form.

***

> *Trial Court.* Anything else you want to add to the record, [prosecution]?

> *Prosecution.* No, your Honor.

> *Trial Court.* [Defense counsel]?

> *Defense Counsel.* No, your Honor.

The trial court thereafter instructed the jury as follows on the charge of armed robbery:

> The defendant's charged with a crime of armed robbery. To prove this charge, the prosecution must prove each of the following elements beyond a reasonable doubt. First that the defendant used force or violence against or assaulted, or put in fear[,] in this case, Joshua, or excuse me, Josh Rowell and/or Stacey Dotson.

> Second, that the defendant did so while he was in the process of committing a larceny. A larceny is the taking and movement of something - - else's property or money with the intent to take it away from that person permanently. In the event [sic] of committing a larceny includes acts that occur in an attempt to commit the larceny or during the commission of a larceny or in flight or attempted flight after the commission of the larceny, or an attempt to retain possession of the property or money.

> Third, that Joshua Rowell and/or Stacey Dotson was present or were present while the defendant was in the course of committing the larceny.

> Fourth, that while in the course of committing the larceny, the defendant possessed a weapon designed to be dangerous and capable of causing death or serious injury; or possessed any other object capable of causing death or serious injury that the defendant used as a weapon; or possessed any other object used or fashioned in a manner to lead the person who was present reasonably to believe that it was a dangerous weapon; or presented orally or otherwise that he was in possession of the weapon.

In addition, the trial court instructed the jury that its verdict "must be unanimous," and that "in order to return a verdict on each count, it is necessary that each of you agree on that verdict."

Then, after the trial court instructed the jury, the following exchange took place:

>    *Trial Court.* The record should reflect the jury has left the courtroom. The Court will entertain any objections to the instructions as given.
>
>    *Prosecution.* No, your Honor.
>
>    *Trial Court.* And [defense counsel]?
>
>    *Defense Counsel.* No, your Honor.

This Court has held that a defendant may waive objection to the jury instructions. *People v Hall (On Remand)*, 256 Mich App 674, 678-679; 671 NW2d 545 (2003). A defendant who waives a right may not then seek appellate review of a claimed deprivation of that right, because his waiver extinguished any error. *Id*. *Hall (On Remand)*, 256 Mich App at 679. Unlike certain fundamental rights which a defendant must personally waive, waiver of the right to object to instructions may be affected by action of trial counsel. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). See also *Hall (On Remand)*, 256 Mich App at 678-679. In *Kowalksi*, 489 Mich at 502, the defendant challenged on appeal the jury instruction on the charge of accosting a minor. The Michigan Supreme Court found that the trial court misinformed the jury of the elements of this offense, which was a constitutional error. *Id*. at 502-503. However, the Court found that the defendant's trial counsel "expressly and repeatedly" approved the jury instructions on the record; therefore, the defendant waived any objections to the erroneous instructions, and there was no error to review. *Id*. at 504. The *Kowalski* Court explained that "[w]hen defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Id*. at 503. See also *People v Unger*, 278 Mich App 210, 233; 749 NW2d 272 (2008). (Holding that the defendant waived any argument regarding the trial court's failure to give a specific instruction when defense counsel expressed satisfaction with the trial court's instructions to the jury) and *Hall (On Remand)*, 256 Mich App at 678-679 (holding that trial counsel's agreement as to the proposed jury instructions waived the defendant's right to have the jury instructed differently).

In the present case, as in *Kowalski*, trial counsel clearly and repeatedly expressed satisfaction with the jury instructions. Therefore, defendant waived any objection to the instructions. *People v Kowalski*, 489 Mich at 504. Defendant cannot seek appellate review of this issue because his waiver extinguished any error. *Hall (On Remand)*, 256 Mich App at 679.[2]

---

[2] Even if this Court did not conclude that defendant waived this issue, we would find that the trial court's instructions did not constitute plain error. Reviewing the instructions in their entirety, we conclude that the instructions fairly presented the triable issues to the jury. See, *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). See also, *People v Cooks*, 446

Next, defendant argues that the prosecution improperly vouched for the credibility of Benson at trial. Defendant did not object to this line of questioning at trial, hence the issue is unpreserved. This Court reviews unpreserved claims for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Pursuant to this standard of review, a defendant must show the existence of a plain error and must show "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* at 763.

In the present case, on direct examination, the prosecution noted that Benson appeared at trial in "Michigan Department of Corrections clothing." In response, Benson stated that he "committed an armed robbery," but pled guilty to unarmed robbery and a "two year gun felony," in exchange for the dismissal of charges of armed robbery, conspiracy, and fleeing and eluding a police officer. The prosecution then inquired if, as part of his plea agreement, Benson also agreed "to testify if called to do so truthfully," and Benson responded in the affirmative. The prosecution did not commit misconduct with these questions because the prosecution was simply disclosing the promises made to obtain the witness' testimony. *Bahoda*, 448 Mich 261, 277, n 27; 531 NW2d 24 (1995). Again, the prosecution had "a duty to disclose promises made to obtain an accomplice's testimony," *Williams*, 123 Mich App 752, 755; 333 NW2d 577 (1983) and because the challenged testimony was, in fact, admissible, no prosecutorial misconduct occurred, *Dobeck*, 274 Mich App at 70.

Next, on cross-examination, defense counsel attempted to impeach Benson with his testimony from the plea hearing in his case, his testimony from the preliminary examination in the present case, and a written report that he provided to the police. During this line of questioning by defense counsel, Benson testified that he "completely lied" in his written statement to the police. In response, on redirect examination, the prosecution asked Benson why he lied, and he stated that he did so in an attempt to keep defendant "from getting in trouble more than me." The following exchange then took place:

> *Prosecution.* What made you change your mind and start telling the truth?
>
> *Benson.* Life in prison. The max of the crime that's carried - - that it did carry. That if I took the blame for what - - what happened, that I'd be doing life in prison.
>
> *Prosecution.* Are you telling the truth now?
>
> *Benson.* Yes.

The prosecution did not commit misconduct with these questions because these questions occurred on redirect examination when the prosecution was attempting to respond to impeachment questioning by defense counsel. *Bahoda*, 448 Mich at 279-280. Viewing the prosecution's questions in context (including the brevity of the questions), the prosecution's questions to Benson did not convey any special knowledge that Benson was testifying truthfully;

Mich 503, 512; 521 NW2d 275 (1994), holding that "a specific unanimity instruction is not required in all cases in which more than one act is presented as evidence of the actus reus of a single criminal offense."

instead, this questioning was simply an attempt to rehabilitate Benson after defense counsel attempted to impeach him. *Bahoda*, 448 Mich at 280. In sum, given the entire circumstances of this case, including the cross-examination of Benson by defense counsel, we concur with the findings of the trial court that the prosecution's elicitation of the substance of Benson's plea agreement, including questions to Benson regarding his agreement to testify truthfully, did not constitute prosecutorial misconduct. *Bahoda*, 448 Mich at 278-279.

Additionally, this Court will "not find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Unger*, 278 Mich App at 235 (citation omitted). In the present case, during the preliminary jury instructions, the trial court instructed the jury that:

> When it's time for you to decide the case, you are only allowed to consider the evidence that was admitted in the case. Evidence includes only the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I tell you to consider as evidence.

And also that:

> The questions the lawyers ask the witnesses are not evidence; only the answers are evidence. You should not think that something is true just because one of the lawyers asks questions that assume or suggest that it is.

Likewise, during the final jury instructions, the trial court instructed the jury that:

> When you discuss the case and decide on your verdict, you may only consider the evidence that was properly admitted in this case. Therefore, it is important for you to understand what is evidence and what is not evidence. Evidence includes only the sworn testimony of witnesses, the exhibits admitted into evidence and anything else I told you to consider as evidence.

> Many things are not evidence, and you must be careful not to consider them as such. I will now describe some of the things that are not evidence. The fact that the defendant is charged with a crime and is on trial is not evidence. The lawyers' statements and arguments are not evidence and each side's legal theories. You should only accept the things the lawyers say that are supported by the evidence or by your own common sense and general knowledge. The lawyers' questions to the witnesses and my questions for the witnesses are also not evidence. You should consider these questions only as they give meaning to the witnesses' answers.

"Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). Therefore, even assuming there was any error in the prosecution's questions to Benson, this error was cured by the trial court's proper instructions to the jury that the case must be decided only on evidence that was properly admitted, and that the questions of the attorneys are not evidence. *Petri*, 279 Mich App at 414; Unger, 278 Mich App at 235. Further, even if plain error existed with respect to the prosecutor's alleged vouching for Benson's credibility, defendant cannot demonstrate that it was outcome

determinative. *Unger*, 278 Mich App at 235 (citation omitted). The evidence overwhelmingly supported defendant's convictions.

Next, defendant alleges that several failures by his trial counsel denied him the effective assistance of trial counsel. "[W]hether a defendant had the effective assistance of counsel 'is a mixed question of fact and constitutional law,' " and "[t]his Court reviews findings of fact for clear error and questions of law de novo." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (citation omitted). To demonstrate ineffective assistance of trial counsel, a defendant has the burden of proving that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Id.* at 80-81.

First, defendant claims that his trial counsel was ineffective for failing to fully investigate Carter's involvement with the police as an informant. At the *Ginther* hearing, defense counsel testified that she was aware that Carter was providing the police with "information about people with drugs," but she did not speak to the officer for whom Carter was working as an informant because she reviewed text messages between Carter and the officer and she was able to "understand what was going on through there." Defendant nevertheless argues that "Carter's involvement with the police and her specific plans to arrange a drug bust on the night in question all suggest that she had the power to select her targets and be treated favorably as a result of her cooperation." However, there was nothing in the record to support a theory or finding that Carter set defendant up for the armed robbery to gain favor with the police or prosecution. Defendant has simply not established a factual predicate for his claim that trial counsel was ineffective for failing to fully investigate Carter's role as a police informant, and this claim of ineffective assistance of counsel fails. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Even if we were to presume defense counsel was ineffective relative to this claim, defendant cannot demonstrate that such failure undermines confidence in the trial's outcome. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Second, defendant claims that his trial counsel was ineffective for failing to expose at trial the nature of the felonies being dismissed in exchange for Carter's cooperation with the police. He argues that this information would have undermined Carter's credibility. The prosecution questioned Carter regarding the charges that were dismissed in exchange for her testimony in this case, so the jury was aware of the nature of the charges being dismissed in exchange for Carter's cooperation. In addition, defendant's trial counsel cross-examined Carter regarding her prior inconsistent statements in an attempt to undermine her credibility. Because the jury was aware of the details of Carter's plea agreement and defendant's trial counsel attacked Carter's credibility on cross-examination, defendant cannot overcome the strong presumption that trial counsel's decision not to further cross-examine Carter regarding her plea deal was anything other than sound trial strategy. *People v Russell*, 297 Mich App at 716. (Decisions with regard to the questioning of witnesses are presumed to be matters of trial strategy). Therefore, this claim of ineffective assistance of counsel fails. *Heft*, 299 Mich App at 80-81.

Third, defendant claims that his trial counsel was ineffective for failing to request an addict-informer instruction with regard to Carter. However, this instruction should only be given if the evidence clearly indicates that the witness was an addict, and occasional drug use by an

informant does not warrant the addict-informer instruction. *People v Griffin*, 235 Mich App 27, 40; 597 NW2d 176 (1999). Carter testified that the night in question was the first time she used heroin, and there was no other evidence in the record about Carter's use of drugs on any other occasion. The record does not support a finding that Carter was an addict. In addition, the addict-informer instruction is only appropriate when "the *uncorroborated* testimony of an addict informant is the only evidence linking the accused with the alleged offense." *People v McKenzie*, 206 Mich App 425, 432; 522 NW2d 661 (1994). Here, Carter's relevant testimony was corroborated by Rowell and Benson. Further, Benson (not Carter) linked defendant to the conspiracy to commit armed robbery. An addict-informer instruction was not appropriate, and defendant has not established that his counsel was ineffective. *People v Jackson*, 292 Mich App 583, 602; 808 NW2d 541 (2011).

Fourth, defendant claims that his trial counsel was ineffective for failing to object to the jury instruction on armed robbery. Defendant argues that the instruction violated defendant's right to a unanimous verdict because it instructed the jury that it could consider the crime of armed robbery with regard to Rowell "and/or" Dotson. As previously stated, defendant's actions were "tantamount to a continuous course of conduct;" specifically, one, single armed robbery. *People v Cooks*, 446 Mich at 528. Because of the evidence presented, there was no reason to believe that the jurors were confused or disagreed about the factual basis of defendant's guilt on this charge. Therefore, the trial court's instruction on the charge of armed robbery, when combined with the general unanimity instruction, was proper. *Cooks*, 446 Mich at 530. Trial counsel is not ineffective for failing to make an objection that lacked merit. *Russell*, 297 Mich App at 720.

Fifth, defendant claims that his trial counsel was ineffective for failing to thoroughly impeach Benson and Carter with inconsistencies between their prior statements and trial testimony. This claim is not supported by the record. At trial, defense counsel impeached Carter with her testimony from the plea hearing in her case and highlighted inconsistencies in Carter's testimony regarding defendant's use of heroin at the apartment and the circumstances under which the guns were first revealed at the apartment. In addition, defense counsel impeached Benson with several prior statements that he made regarding the events in this case and highlighted inconsistencies in Benson's testimony regarding whether the three friends spoke about the robbery at defendant's house, defendant's use of heroin at the apartment, whether the guns were concealed when he put them in the trunk of the car, what the three friends intended to do once they arrived at the apartment, and whether defendant had a gun at the apartment. Although trial counsel may not have highlighted every aspect in which the trial testimony of Benson and Carter was inconsistent with previous statements of the witnesses, failure to impeach a witness on all contradictory aspects of his or her statements is a matter of trial strategy and does not necessarily constitute ineffective assistance of counsel. *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). Defendant cannot overcome the strong presumption that trial counsel's actions were sound trial strategy, *id.*, and this claim of ineffective assistance of counsel fails. *Heft*, 299 Mich App at 80-81.

Sixth, defendant claims that his trial counsel was ineffective for failing to properly follow up to the prosecution's improper vouching for Benson. For the reasons stated above, the prosecution's questions to Benson did not constitute vouching and were proper. Therefore, defendant has not established that trial counsel was ineffective for failing to object to these

questions because such an objection would have lacked merit, *Russell*, 297 Mich App at 720, and trial counsel was not required to request a curative instruction when such an instruction was inapplicable, *Jackson*, 292 Mich App at 602. Defendant also challenges his trial counsel's response to the prosecution's redirect questioning of Benson. Reviewed in context of trial counsel's recross examination of Benson, it is clear that defense counsel was not ineffective. Indeed, on recross examination, Benson admitted that he changed his story based on his plea agreement. Defendant has not overcome the presumption that the questioning of Benson was sound trial strategy, *Russell*, 297 Mich App at 716, and his claim of ineffective assistance of counsel fails, *Heft*, 299 Mich App at 80-81.

Defendant's final argument on appeal is that his conviction for conspiracy to commit armed robbery was against the great weight of the evidence because the only evidence supporting this verdict was Benson's testimony, and Benson was impeached. A lower court's ruling on a motion for new trial based on the claim that the verdict was against the great weight of the evidence is reviewed for abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). A trial court may grant a motion for a new trial based on the great weight of the evidence "only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). A trial court "judge may not repudiate a jury verdict on the ground that 'he disbelieves the testimony of witnesses for the prevailing party,'" and "absent exceptional circumstances, issues of witness credibility are for the jury." *Id*. at 636, 642. Although exceptional circumstances exist when a witness' testimony has been "seriously impeached" so that the case is marked by "uncertainties and discrepancies," the credibility of witnesses remains an issue for the jury unless it can be said "as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it." *Id*. at 643-644.

To convict a defendant of armed robbery, the prosecution must prove beyond a reasonable doubt that:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

See also MCL 750.529. To prove conspiracy to commit a crime, the prosecution must prove that two or more people agreed to commit the crime, with the specific intent to accomplish the illegal activity. *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). See also MCL 750.157a. "[D]irect proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *People v Justice*, 454 Mich 334, 347; 562 NW2d 652 (1997).

Benson testified that before they departed for defendant's apartment, he, defendant, and Carter planned to put a gun to Rowell's head and scare him into giving them his money and drugs. Benson also testified that while they were in the car driving to Rowell's apartment, defendant, Benson, and Carter again discussed pointing the guns at Rowell to scare him into giving them his money and drugs. Further, Benson testified that once they arrived at the apartment, they discussed the details of the robbery; specifically, defendant would hold a gun to Carter's neck, Benson would point a gun at Rowell, then defendant would tell Rowell to give them his drugs and money. This testimony, if believed, supported beyond a reasonable doubt defendant's conviction for conspiracy to commit armed robbery. *Mass*, 464 Mich at 629; *Chambers*, 277 Mich App at 7; MCL 750.529; MCL 750.157a.

Although Benson was impeached during the trial, his testimony regarding the conspiracy was not deprived of all probative value or unbelievable. *Lemmon*, 456 Mich at 643. Moreover, while Carter denied taking part in the conspiracy conversations, she clearly had an interest in denying her own involvement with yet another crime. Additionally, the jury could have found this portion of her testimony dubious. Thus, her testimony did not deprive Benson's testimony of all value or make it unbelievable. Further, there was no evidence in the record to contradict Benson's testimony that the guns belonged to defendant's father and were transported to Rowell's apartment in defendant's mother's vehicle, which defendant was driving; proof of the acts required to support a conspiracy may be derived from circumstantial evidence. *Justice*, 454 Mich at 347. Finally, although defense counsel impeached Benson with his previous statements regarding the events in question, Benson's testimony at trial was actually consistent with the testimony of Rowell, Carter, and Dotson with regard to most of the events of the evening. In sum, the evidence did not preponderate so heavily against the verdict on this charge that "it would be a miscarriage of justice to allow the verdict to stand," *Unger*, 278 Mich App at 232, and no exceptional circumstances existed, so the credibility of the witnesses was properly left to the jury, *Lemmon*, 456 Mich at 642. Accordingly, defendant's argument that Benson's testimony was so seriously impeached and beset with discrepancies that a new trial is required is not supported by the law or the record. Therefore, defendant is not entitled to relief on this issue.

Affirmed.


/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro