# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LESTER MARTEZ BENFORD,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2015

No.   319301
Wayne Circuit Court
LC No.   13-001867-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RODNEY CLARENCE KENNARD,

        Defendant-Appellant.

No.   319308
Wayne Circuit Court
LC No.   13-003288-FC

Before:  FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendants Lester Martez Benford and Rodney Clarence Kennard were tried jointly, before a single jury.  The jury convicted defendant Benford of second-degree murder, MCL 750.317, and convicted defendant Kennard of first-degree premediated murder, MCL 750.316(1)(a).[1]  The trial court sentenced defendant Benford to 38 to 60 years' imprisonment for his second-degree murder conviction, and sentenced defendant Kennard to life imprisonment without parole for his first-degree murder conviction.  Defendant Benford appeals as of right in Docket No. 319301, and defendant Kennard appeals as of right in Docket No. 319308.  We affirm in both appeals.

---

[1] The jury acquitted defendant Benford of first-degree premediated murder, MCL 750.316(1)(a), and acquitted each defendant of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b.

-1-

# I. BASIC FACTS

Defendants were convicted of murdering Delrico Taylor, who died from multiple gunshot wounds. The victim's body was discovered during the early morning hours of September 12, 2011, in the garage of a vacant home in Detroit. The body had been badly burned. An odor of gasoline was detected when the body was moved. Bullets removed from the victim's body and shell casings found near the scene indicated that two firearms were involved in the shooting.

Earlier in the evening, the victim was at a nearby home with his longtime friend, Locaster Croskey. The victim flagged down defendants Benford and Kennard, who had known the victim for many years. A few months before the shooting, the victim had stabbed defendant Benford, causing him to seek medical treatment. As the men entered Croskey's home, defendant Benford threatened to shoot a small dog that was barking at him. Eventually, the victim left Croskey's home with defendants and Antowan Stitts to go to a liquor store.

Defendants and Stitts were charged with the victim's murder, but Stitts pleaded guilty to accessory after the fact, MCL 750.505, pursuant to a plea agreement. At trial, he testified that the men were walking when he heard a clicking sound. According to Stitts, defendant Benford tried to shoot the victim, but Benford's gun, described by Stitts as a .380, jammed. The victim and defendant Benford then struggled over the gun, which discharged, striking defendant Benford in the hands. The victim fled, but defendant Kennard chased him down and struck him. The victim fell to the ground, bleeding and unconscious. The victim was taken to the garage, after which defendant Kennard retrieved a .22 rifle and shot the victim three times. Defendant Benford left to seek treatment at a hospital. Stitts gave defendant Kennard his gas can, and defendant Kennard set the victim on fire.

A neighbor, Michael Pokladek, heard a loud sound and went outside where he saw four men. It appeared that three of the men were fighting one man. One of the taller men pulled a black Glock handgun and fired a shot at the victim. Pokladek did not want to get involved and went into his house where he heard additional shots fired.

Tanise Page lived with her children, Howard Grandberry, and her cousin Ericka Williams, who was defendant Kennard's girlfriend. On September 12, 2011, defendant Kennard entered the home with Stitts and an unknown male. They went into the bathroom and washed up for 20 minutes. Later that day, individuals came to the home looking for defendant Kennard. Within three days of the offense, Page's home was firebombed. She went to the police and attributed the arson to retaliation against defendant Kennard. In December 2011, Page heard defendant Kennard tell someone that what happened to the victim could happen to them, which she interpreted as bragging.

Nakisha Jenkins, the mother of the victim's child, was also a close friend of defendant Benford. Defendant Benford told Jenkins that he was walking with the victim when two men jumped out of a car with guns and attacked them. Defendant Benford was shot in the hands. However, defendant Benford told a police officer at the hospital that he was injured when the victim tried to shoot him and the two men struggled over the gun.

Defendants presented evidence that Stitts either denied or minimized his role to the police and his probation officer, but told other inmates that he committed the murder. Additionally, on cross-examination, Stitts admitted that he avoided life imprisonment by entering into the plea agreement and now faced a maximum penalty of a five-year prison term for the charge of accessory after the fact. Defendant Kennard's girlfriend, Ericka Williams, offered an alibi that she saw defendant Kennard at her home shortly after she heard gunshots.

## II. DOCKET NO. 319301 (DEFENDANT BENFORD)

### A. EVIDENCE OF DEFENDANT BENFORD'S POSSESSION OF A .38 HANDGUN

Defendant Benford first argues that the trial court abused its discretion by allowing Nakisha Jenkins's testimony that she had previously seen defendant Bedford with a .38 handgun. Defendant argues that this evidence was inadmissible under MRE 404(b) because it was introduced to show his bad character, and because the prosecution failed to provide notice of its intent to introduce the evidence before trial. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

MRE 404(b)(1) prohibits evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith," but expressly allows such evidence to be admitted for other purposes, such as to show "opportunity" to commit a crime. The prosecution is generally required to provide reasonable notice in advance of trial of its intent to introduce evidence under this rule, but the trial court may excuse pretrial notice on good cause shown. MRE 404(b)(2).

At trial, the prosecutor explained that she did not learn of Jenkins's proposed testimony until after the start of trial, and gave notice to the defense as soon as she was aware or in close proximity thereafter. The prosecutor's receipt of this information after trial began constituted good cause for failure to provide pretrial notice. Contrary to what defendant Benford argues, the evidence was not offered for the purpose of showing that he was a bad person who possessed guns. The evidence was offered to show that defendant Benford had access to a type of gun used during the offense. "Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580; 447 NW2d 580 (1989). The fact that Jenkins relayed defendant Benford's identification of the gun as a .38, but Stitts identified it as a .380, did not render the evidence irrelevant. The varying descriptions created a factual issue for the jury. Moreover, expert testimony established that both types of guns were capable of firing the caliber of ammunition connected to the offense. Further, the probative value of Jenkins's testimony regarding defendant Benford's possession and control of a .38 gun, a gun capable of firing the caliber class of ammunition found at the scene, was not substantially outweighed by the danger of unfair prejudice. See *id.* at 584. Accordingly, the trial court did not abuse its discretion in admitting the evidence.

### B. PROSECUTORIAL MISCONDUCT

Defendant Benford contends that the prosecutor improperly vouched for Stitts's credibility during closing argument, and improperly gave unsworn testimony when she explained

the plea deal offered to Stitts. Because defendant Benford did not object to the prosecutor's remarks at trial, this issue is not preserved. *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). Error requiring reversal will not be found when a curative instruction could have displaced any prejudicial effect of the prosecutor's improper argument. *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005).

Questions of prosecutorial misconduct are decided on a case-by-case basis, and a prosecutor's remarks must be evaluated in context, including the defense arguments, and their relationship to the evidence admitted at trial. *Roscoe*, 303 Mich App at 648; *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Although a prosecutor cannot vouch for the credibility of her witnesses, *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995), a prosecutor "has a duty to disclose promises made to obtain an accomplice's testimony," *People v Williams*, 123 Mich App 752, 755; 333 NW2d 577 (1983), and a prosecutor's reference to a plea agreement that requires a witness to testify truthfully is not erroneous, provided the prosecutor does not suggest that the government has some special knowledge that the witness testified truthfully. *Bahoda*, 448 Mich at 276.

In closing argument, the prosecutor showed various exhibits to the jury and argued how the photographs corroborated the testimony of the witnesses. When discussing certain photographs, the prosecutor raised the issue of Stitts's credibility. She explained that the evidence conflicted regarding Stitts's participation in the offense and that the credibility of his testimony presented an issue for resolution by the jury. She also noted that the testimony of the neighbor and Page, as well as the photographs, corroborated Stitts's testimony, which served as the basis for offering him a plea deal.

It was the defense theory throughout trial that Stitts was lying and had falsely accused the defendants to minimize his involvement in the crimes. Defendants elicited that Stitts sought to avoid serving life imprisonment, and that his plea deal was for a maximum prison term of five years. The prosecutor was entitled to respond to this theory in closing argument. The prosecutor was also entitled to comment on the effect of the promises that were made to obtain Stitts's testimony. The prosecutor outlined the evidence and why those facts supported the plea deal. Specifically, she stated that Pokladek had testified that the taller man was the shooter, which was consistent with the evidence offered by Stitts. However, the prosecutor also noted that there was support for the contention that Stitts was a participant in the plan to kill the victim. Nonetheless, the prosecutor properly advised the jury that the credibility of his testimony was for the jury to decide. The prosecutor's argument did not constitute unsworn testimony and did not impermissibly vouch for the credibility of Stitts. Simply put, the prosecutor did not engage in misconduct by acknowledging the plea deal and the facts of the case that gave rise to the plea deal of the least culpable individual, and by acknowledging that the ultimate assessment of Stitts's credibility was for the jury to resolve. Accordingly, the prosecutor's argument was not plain error.

Furthermore, the trial court instructed the jury that the arguments of counsel were not evidence, and that it must decide which witnesses to believe. In addition, the court instructed the jury specifically with regard to Stitts's testimony that it should "examine [his] testimony closely and be very careful about accepting it," including whether his plea agreement with the prosecutor and his avoidance of a possible penalty of life imprisonment in exchange for his testimony affected his credibility or demonstrated his bias or self-interest. Jurors are presumed to follow the court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The trial court's instructions were sufficient to protect defendant Benford's substantial rights.

Because the prosecutor's conduct was not improper, we also reject defendant Benford's alternative claim that defense counsel was ineffective for not objecting to the prosecutor's remarks. Counsel is not ineffective for failing to raise meritless or futile objections. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).

## C. DEFENDANT BENFORD'S STANDARD 4 BRIEF

Defendant Benford raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4, none of which require appellate relief.

## 1. TRIAL COURT ERRORS

Defendant Benford argues that the trial court erred in admitting evidence, failed to maintain control over the calling and sequestration of witnesses, and erroneously instructed the jury, and that these errors deprived him of a fair trial. We disagree.

The trial court's decision to admit evidence is reviewed for an abuse of discretion. *Gursky*, 486 Mich at 606. A claim of instructional error involving a question of law is reviewed de novo, but the trial court's conclusion that an instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

Although defendant Benford argues that the trial court erred by admitting the medical records from his May 2011 hospitalization after he was stabbed by the victim, the substance of his argument is that it was improper to admit evidence of the prior stabbing incident itself. As defendant Benford acknowledges, that evidence was relevant to the issue of motive, because it suggested that he had a reason to harm the victim in retaliation for the prior stabbing. Although defendant Benford maintains that the prior stabbing was an accident, he fails to identify record evidence to support that contention. Jenkins, who identified herself as the mother of the victim's child and defendant Benford's best friend, testified that defendant Benford and the victim both told her about the stabbing. The medical records would have been cumulative to that testimony. The admission of mere cumulative evidence is not prejudicial. *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996). To the extent that defendant Benford maintains that the prior stabbing was accidental, that argument would not preclude admission of this evidence, but only create a factual question for the jury to resolve, and the weight it should give the evidence. Accordingly, we find no error.

Next, defendant Benford asserts that the trial court erred in excluding evidence regarding the victim's possession of a gun and evidence that Stitts was under investigation for a murder in Grosse Pointe. The record does not support these claims. Croskey was permitted to testify that *Stitts* always carried a gun and made everyone aware of it, while the *victim* always carried a knife. The question and answer that was excluded was whether Croskey was aware that the victim was convicted of carrying a concealed weapon. The trial court permitted counsel to question Croskey about his knowledge concerning whether the victim possessed a gun. Croskey admitted that he could not say for sure if the victim carried a gun, and stated that he never saw him with one. In sum, the court permitted the introduction of evidence that the victim carried a weapon, but the testimony identified that weapon as a knife, not a gun. With regard to the contention that the trial court improperly excluded evidence that Stitts was a person of interest in a Grosse Pointe murder investigation, the trial court excluded this evidence because a foundation for its admission was never established. When the issue arose, the trial court accepted an offer of proof outside the presence of the jury. Stitts testified that he was questioned by Grosse Pointe police officers, but denied that he was the subject of their investigation. Defendant Benford never attempted to present any other evidence in support of his claim. Therefore, this issue fails for lack of record support.

The record also fails to support defendant Benford's contention that the trial court's control of the presentation of witnesses favored the prosecution. The trial court "shall" exercise reasonable control over the mode and order of interrogation of witnesses such that the presentation ascertains the truth, avoids wasting time, and protects the witnesses. MRE 611(a). This rule of evidence affords the trial court broad power to control the interrogation of the witnesses, and appellate review is for a clear abuse of discretion. *People v Marji*, 180 Mich App 525, 532-533; 447 NW2d 835 (1989). Croskey testified on direct examination, but when trial resumed the next day, the prosecutor began to call various police witnesses. Although defendant Benford contends that there was no apparent reason for taking the witnesses out of order and not immediately resuming with Croskey's cross-examination, Croskey explained when cross-examination resumed that he had trouble getting to court that morning. The record thus indicates that the trial court's decision to take witnesses out of order was intended to facilitate the jury's time, not to afford any advantage to the prosecution. This decision was within the range of reasonable and principled outcomes under the circumstances. Further, defendant Benford fails to explain how the order of presentation of witnesses provided the prosecution with a tactical advantage. We therefore reject this claim of error.

With regard to sequestration, defendant Benford contends that although the trial court ordered sequestration of the witnesses, they did not comply with its order and discussed the case. Defendant Benford has failed to establish any factual support for this argument. An appellant has "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal is predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Defendant Benford's reliance on similarity in the witness's testimony is insufficient to establish that the sequestration order was violated.

Defendant Benford also contends that the trial court erred by failing to properly instruct the jury on all elements of second-degree murder. The jury instructions must include all elements of the charged offense in addition to any material issues, defenses, and theories if supported by the evidence. *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

-6-

M Crim JI 16.5 addresses second-degree murder and provides:

(1) [The defendant is charged with the crime of / You may also consider the lesser charge of] second-degree murder. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant caused the death of [*name deceased*], that is, that [*name deceased*] died as a result of [*state alleged act causing death*].

(3) Second, that the defendant had one of these three states of mind: [he / she] intended to kill, or [he / she] intended to do great bodily harm to [*name deceased*], or [he / she] knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of [his / her] actions.

[(4) Third, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.] [Footnotes omitted, emphasis in original.]

The use note following paragraph four states: "Paragraph (4) may be omitted if there is no evidence of justification or excuse, and the jury is not being instructed on manslaughter or any offense less than manslaughter."

The record discloses that the trial court inquired regarding the evidence of justification, excuse, or self-defense that was submitted by the parties. Counsel argued that self-defense was available because Pokladek heard a scuffle and went outside. The defense asserted that it was possible that the victim was the aggressor, but that the gun was taken from the victim. The evidence that the victim carried a knife was also posited as a basis for a self-defense instruction. The trial court held that there was insufficient evidence on the record to support a claim of deadly force in self-defense, but indicated that it would reconsider that decision if the defense could show actions in lawful self-defense.

The trial court did not err by failing to submit the issue of justification or excuse to the jury. To justify that instruction, that theory of defense must be supported by evidence. *McGhee*, 268 Mich App at 606. The defense argument for a plausible justification or excuse was based on the theory that Pokladek may have heard the victim firing the weapon as the aggressor, but when he went outside, he only witnessed defendants recovering the weapon from the victim. This was not a reasonable inference from the evidence. More significantly, if defendants and Stitts had recovered the weapon from the victim, they would not be entitled to use deadly force at that time. See *Dupree*, 486 Mich at 709-710; MCL 780.972. Defendant Benford argues that his hospital statement to the police regarding wrestling with the victim for the gun provided evidence of justification or excuse. However, he merely stated that the victim pulled a gun on him, they wrestled, defendant Benford was shot, and he sought help from his girlfriend. Defendant Benford never asserted that he shot the victim in self-defense.

Furthermore, Stitts's testimony indicated that the victim took off running and was pursued by defendant Kennard, who grabbed the victim, choked him, and knocked his head against the pavement, rendering him unconscious. According to Stitts, Kennard then obtained a

.22 rifle and shot the victim three times. The evidence did not support the existence of any possible excuse or justification for the killing to require the instruction in paragraph (4) of M Crim JI 16.5. Accordingly, the trial court did not err by failing to give that instruction.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Benford also raises several claims of ineffective assistance of counsel. Because these claims were not raised in a motion for a new trial or request for a *Ginther*[2] hearing, our review is limited to errors apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). "Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "There is a presumption that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

Defendant Benford argues that the admission of codefendant Kennard's custodial statement at their joint trial violated *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), and defense counsel was ineffective for failing to object to the admission of that statement. The record discloses that within days after the offense, defendant Kennard gave a statement to the police in which he stated that he was with the victim and defendant Benford *earlier in the evening*, but left and went into a house with another man. Later that evening, Kennard heard gunshots and, about 15 or 20 minutes later, defendant Benford appeared and said he had been shot. The trial court instructed the jury that defendant Kennard's statement was admissible only against defendant Kennard.

A *Bruton* violation occurs "when a codefendant's incriminating confession is admitted at their joint trial, even if the jury is instructed to limit consideration of the confession only against the codefendant." *People v Etheridge*, 196 Mich App 43, 47; 492 NW2d 490 (1992), citing *Bruton*, 391 US 123. Here, defendant Kennard did not confess any involvement by himself or defendant Benford in the victim's death. Although defendant Kennard's statement acknowledged that defendant Benford was with the victim when defendant Kennard left them, defendant Kennard did not claim any knowledge of what happened to the victim or indicate that defendant Benford was responsible for the victim's death. The fact that the victim and defendant Benford were together when defendant Kennard left them was not a confession or an accusation. Accordingly, a *Bruton* violation did not occur. Furthermore, the information in defendant Kennard's statement that defendant Benford and the victim were together, and that defendant Benford later appeared and said he had been shot, was consistent with the information that defendant Benford had reported in his hospital statement to the police, which was admitted at trial against defendant Benford. Because defendant Kennard did not purport to have any

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

knowledge about what happened to the victim, and the information in his statement was consistent with the information supplied in defendant Benford's separate statement, it was not objectively unreasonable for defense counsel to decline to object to the admission of defendant Kennard's statement at their joint trial. Accordingly, this issue does not support a claim of ineffective assistance of counsel.

Defendant Benford also contends that trial counsel was ineffective for failing to move for separate trials. He argues that he was prejudiced by the joint trial because defendant Kennard's counsel explored defendant Benford's motive to harm the victim in light of the prior stabbing incident that occurred between them. "Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). To warrant severance, the defenses must be mutually exclusive or irreconcilable. *Id*. at 349. Incidental spillover prejudice is generally inevitable and insufficient to warrant severance. *Id*. Rather, the tension between the defenses must cause a jury to believe one defendant at the expense of another. *Id*.

The fact that defendant Kennard acknowledged the prior incident between the victim and defendant Benford does not rise to the level of mutually exclusive or irreconcilable defenses. The prosecution similarly argued that the prior stabbing incident established a motive for defendant Benford to harm the victim. The prosecution would have been able to argue that motive at either a joint or separate trial. At trial, defendant Kennard offered his girlfriend, Williams, as an alibi witness. Defendant Kennard's alibi defense did not require the jury to believe one defendant at the expense of the other. Therefore, defense counsel was not ineffective for failing to move for separate trials. Any motion would have been futile. *Eisen*, 296 Mich App at 329.

Lastly, defendant Benford argues that trial counsel was ineffective for failing to object to the "improper sequestration of the witnesses." As previously indicated, the record does not establish any violation of the court's sequestration order. Accordingly, defendant Benford cannot establish that defense counsel was ineffective for failing to object. *Id*.

## III. DOCKET NO. 319308 (DEFENDANT KENNARD)

### A. PREARREST DELAY

Defendant Kennard first argues that the trial court erred in denying his motion to dismiss based on the delay between the commission of the offense on September 12, 2011, and his arrest on February 22, 2013. We disagree. The trial court's ruling on a motion to dismiss is reviewed for an abuse of discretion. *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012). Constitutional issues are reviewed de novo. *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009).

Prejudice resulting from delay between the commission of an offense and an arrest may violate a defendant's right to due process. *Id*. To obtain dismissal premised on prearrest delay, there must be actual and substantial prejudice to the defendant's ability to receive a fair trial,

coupled with the prosecution's intent to gain a tactical advantage. *Id.* at 237. Actual and substantial prejudice, not merely speculative prejudice, must be shown by the defendant. *People v Adams*, 232 Mich App 128, 134-135; 591 NW2d 44 (1998). Substantial prejudice means the defendant's ability to defend against the state's charges was impaired to such an extent that the outcome of the criminal proceeding was likely affected. *Id.* "If a defendant demonstrates prejudice, the prosecution must then persuade the court that the reason for the delay sufficiently justified whatever prejudice resulted." *Patton*, 285 Mich App at 237. The court's evaluation of the delay may consider the explanation for it, whether it was deliberate, and whether undue prejudice attached to the defendant. *People v Cain*, 238 Mich App 95, 109; 605 NW2d 28 (1999).

In the present case, defendant Kennard asserts that he was prejudiced by the loss of memories and witnesses, including "Tone," a witness who allegedly was outside at the time of the gunshots. However, general allegations that the memories of witnesses have suffered does not sufficiently demonstrate prejudice. *People v Musser*, 259 Mich App 215, 220; 673 NW2d 800 (2003). Further, there is no indication that defendant Kennard was unable to locate "Tone" because of the delay before his charge and arrest. Pokladek testified that when the police canvased the area, Tone called him to the door and said he did not want to be interviewed by the police. Even if Tone was outside at the time of the gunshots, there is no basis for concluding that he would have provided testimony that was not cumulative to that of Pokladek. Defendant Kennard also observes that DNA testing was completed in November 2012, and the charges were not filed until February 2013, but there is no information to indicate that this three-month delay provided the prosecution with a tactical advantage. Defendant Kennard's generalized and unsupported assertions of prejudice and the existence of a tactical advantage to the prosecution are insufficient to establish a due process violation. Accordingly, the trial court did not abuse its discretion by denying defendant Kennard's motion to dismiss with respect to this issue.

## B. APPOINTMENT OF DEFENSE EXPERTS

Defendant Kennard next argues that the trial court erred by denying his requests for appointment of a defense expert to examine evidence or to conduct additional DNA and fingerprint testing, thereby depriving him of his constitutional right to present a defense. We disagree.

Defendant Kennard filed a motion for appointment of an independent forensic pathologist to review the medical and autopsy records, and for DNA testing and fingerprint analysis of a firearm grip, knife, and gym shoes. Defendant Kennard wanted an expert to analyze the medical examiner's conclusions regarding the angles of the bullets, the position of the shooter, and the position of the victim. The trial court denied the motion, without prejudice, ruling that defense counsel could interview the medical examiner regarding these issues and re-file the motion with additional information to demonstrate the necessity for appointment of an expert. With regard to the DNA and fingerprint evidence, the trial court also denied the motion, without prejudice, to allow defense counsel to determine whether the items were even suitable for testing.

We review a trial court's decision to grant or deny an indigent defendant's motion for the appointment of an expert witness for an abuse of discretion. *People v McDonald*, 303 Mich App 424, 434; 844 NW2d 168 (2013). An abuse of discretion occurs when the decision results in an

outcome that falls outside the range of reasonable and principled outcomes. *Id*. Whether a defendant suffered a deprivation of his constitutional right to present a defense is reviewed de novo. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

MCL 775.15 authorizes payment of funds for an expert witness when the defendant makes a showing that the witness is material and necessary to safely proceed to trial. *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006). To warrant appointment of an expert, a defendant must demonstrate a nexus between the facts of the case and the need for the expert. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). The mere possibility of assistance from the requested expert is insufficient to warrant an appointment. *Id*. "Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Carnicom*, 272 Mich App at 617.

"A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses. US Const, Am VI; Const 1963, art 1, § 20[.]" *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). However, as explained in *People v Orlewicz*, 293 Mich App 96, 101-102; 809 NW2d 194 (2011):

> The right to present a defense is not absolute or unfettered. A trial court may exclude evidence if its probative value is outweighed by factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. Therefore, a court may exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues. Similarly, defendants are entitled to present witnesses in their defense, but again that right is not absolute. To the contrary, it requires a showing that the witness' testimony would be both material and favorable to the defense. The underlying question is whether the proffered evidence or testimony is relevant and material, or unfairly prejudicial. [Citations and internal quotation marks omitted.]

First, defendant Kennard has not established that he was deprived of his right to present a defense. The trial court did not preclude defendant Kennard from pursuing a particular line of defense. Further, it did not outright deny his request for appointment of an independent pathologist or for DNA and fingerprint testing, but only required him to demonstrate a need for appointment of an expert and additional testing. Because the court did not preclude defendant Kennard from further investigating or pursuing these matters, there is no merit to his argument that the court deprived him of his right to present a defense.

The trial court also did not abuse its discretion by denying defendant Kennard's request for appointment of an expert and for additional evidentiary testing. The trial court denied the requests without prejudice, pending counsel's acquisition of additional information regarding the need for an expert and whether the requested evidentiary materials were available and suitable for testing. Although defense counsel had posited that an independent pathology expert could analyze the medical examiner's conclusions regarding the angles of the bullets, the position of the shooter, and the position of the victim, the medical examiner testified at trial that she could not identify the position of the victim's body and the shooter's distance at the time of the shooting. Moreover, the trial court did not foreclose the possibility of an appointment of an

-11-

expert if defendant Kennard could establish a need for an expert, but defendant Kennard never refiled his motion with a renewed showing of need.

Similarly, with regard to the DNA and fingerprint testing, the trial court noted that the gun grip was tested for DNA, but seemingly not the fingerprint evidence. Before simply ordering additional testing, the court sought confirmation that any testing was likely to yield results. Defense counsel agreed to make additional inquiry, but there is no indication that he further pursued this issue. This additional inquiry was necessary to establish a nexus between the information sought, the facts, and the need for further expert testing. *McDade*, 301 Mich App at 356. Because defense counsel failed to establish the requisite nexus, the trial court did not abuse its discretion in denying defendant Kennard's motion.

## C. SEPARATE TRIALS OR SEPARATE JURIES

Defendant Kennard next argues that the trial court erred in denying his motion for a separate trial, or separate juries. We disagree. The trial court's ruling on a motion to sever trials is reviewed for an abuse of discretion. *People v Williams*, 483 Mich 226, 234 n 6; 769 NW2d 605 (2009).

A defendant does not have a right to a separate trial, and strong public policy favors joint trials because it serves the interests of justice, judicial economy, and administration. *People v Harris*, 201 Mich App 147, 152; 505 NW2d 889 (1993). MCR 6.121(C) provides that "[o]n a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." "Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Hana*, 447 Mich at 346.

Defendant Kennard argues that severance was necessary because of the differing defense theories that he and defendant Benford presented. To warrant severance, the defenses must be mutually exclusive or irreconcilable. *Id*. at 349. Incidental spillover prejudice is generally inevitable and insufficient to warrant severance. Rather, the tension between the defenses must cause a jury to believe one defendant at the expense of another. *Id*. Although defendants Kennard and Benford presented different defenses at trial, they were not mutually exclusive or irreconcilable. Defendant Kennard presented an alibi defense. Defendant Benford gave a statement in which he claimed that the victim threatened him with a gun, which led to a struggle over the gun during which defendant Benford was shot, but defendant Benford denied participating in the shooting death of the victim. The jury was not required to believe one defendant at the expense of the other. Moreover, both defendants argued that the real perpetrator was Stitts, whose testimony implicating each of them in the offense was not credible because it was motivated by his desire to avoid a life sentence.

Defendant Kennard also cites the fact that defendant Benford had a motive to kill the victim in light of the prior stabbing incident, whereas the evidence against him was weak and inconsistent. The fact that the jury had a basis for finding that defendant Benford had a reason to harm the victim, but lacked an apparent motive for defendant Kennard's participation in the

offense, does not satisfy the criteria for severance of trials and does not demonstrate the necessary prejudice to warrant reversal on appeal. *Id.* at 346-349. Accordingly, the trial court did not abuse its discretion in denying defendant Kennard's motion for separate trials or a separate jury.

## D. ADMISSION OF PAGE'S PRELIMINARY EXAMINATION TESTIMONY

Defendant Kennard argues that the trial court erred in admitting Tanise Page's preliminary examination testimony because (1) the prosecutor failed to exercise due diligence to locate and produce Page for trial, and (2) the admission of Page's preliminary examination testimony violated his constitutional right of confrontation. We disagree. The trial court's determination regarding due diligence is reviewed for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). However, factual findings underlying the trial court's due diligence determination will not be reversed unless clearly erroneous. *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992).

## 1. DUE DILIGENCE

When a prosecutor endorses a witness pursuant to MCL 767.40a(3), he is obligated to exercise due diligence to produce that witness at trial. *Eccles*, 260 Mich App at 388. "A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence." *Id*. Due diligence requires an attempt to do everything reasonable, but not everything possible, to secure the presence of the witness. *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). "The test for due diligence is one of reasonableness, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v James (After Remand)*, 192 Mich App 568, 571; 481 NW2d 715 (1992). Due diligence considers not only the efforts expended, but also the timing of those efforts. *Id*. In *James*, this Court held that failure to maintain contact with a witness for 3½ years between the preliminary examination and the start of trial, and the mere mailing of a subpoena to the witness three weeks before trial did not constitute due diligence. *Id*. at 571-572. However, in *People v Watkins*, 209 Mich App 1, 4; 530 NW2d 111 (1995), this Court concluded that due diligence was established despite a four-year lapse between the defendant's first trial and the reversal of the defendant's convictions when the witness willingly appeared at the first trial and efforts to locate the witness were exhaustive and began one month before the trial.

The record discloses that Page did not voluntarily appear at the preliminary examination. After a bench warrant was issued, Investigator Don Olsen was able to pick her up and bring her to the preliminary exam. The exam was held in March 2013, and the trial began in September 2013. During that six-month period, Page moved from her former address, but did not notify the prosecutor, the secretary of state, or an individual caring for her child. She was involved with the Department of Human Services because of a child protection proceeding, but she did not maintain agency contact. There had been no activity with her bridge card since August 12, 2013, and there was no current contact information. Olsen was unable to obtain a new address for Page from the post office or the new occupants of Page's former residence. The address on her driver's license was a boarded up, vacant home. Olsen contacted a caregiver for one of Page's children and obtained Page's phone number, but no one answered that phone and Olsen was

-13-

unable to leave a message. Consequently, Olsen also left word with Page's family members that he was trying to reach her to bring her to court for trial. He also checked police databases and enlisted the assistance of federal marshals to aid in his search. The trial court did not abuse its discretion in determining that diligent efforts were made to locate Page for trial, and that she could not be produced despite the exercise of due diligence.

## 2. RIGHT OF CONFRONTATION

Defendant Kennard also argues that the admission of Page's preliminary examination testimony in lieu of her live testimony at trial violated his constitutional right of confrontation. We disagree. Whether the admission of evidence violates a defendant's constitutional right of confrontation presents a question of law, which is reviewed de novo. *People v Dinardo*, 290 Mich App 280, 287; 801 NW2d 73 (2010).

"The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker (On Remand)*, 273 Mich App 56, 60-61; 728 NW2d 902 (2006). MRE 804(b)(1) incorporates these constitutional requirements. The rule provides that testimony given as a witness at another hearing of the same or a different proceeding is admissible "if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." "Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007). Factors to consider to determine whether a party had a similar motive to examine a witness at the prior proceeding include: (1) whether the prior proceeding involved an interest of substantially similar intensity to prove or disprove; (2) the nature of the two proceedings, including the issues and the applicable burdens of proof; and (3) whether cross-examination was available and exercised. *Id*. at 278.

Notwithstanding the different burdens of proof at a preliminary examination and a trial, both proceedings involved an issue of substantially similar intensity, namely, defendant Kennard's involvement in the victim's homicide. Defendant Kennard had a similar motive to develop the testimony at the prior proceeding, and cross-examination was both available and exercised extensively. Extensive cross-examination at the preliminary examination provides "opportunity" and "similar motive" for admission of former testimony. See *People v Meredith*, 459 Mich 62, 66-67; 586 NW2d 538 (1998). The trial court also noted that defense counsel had the opportunity to review materials regarding Page's participation in an investigative subpoena proceeding in order to question her effectively. Although defendant Kennard asserts that the cross-examination was deficient, he fails to identify any line of inquiry that would have been pursued if Page had appeared at trial. Defendant Kennard complains that the admission of Page's preliminary examination testimony did not allow the jury to view Page's demeanor at the preliminary examination. However, the Confrontation Clause only guarantees a defendant an opportunity for effective cross-examination. It does not require "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988). Under the circumstances, the

trial court did not err by allowing Page's preliminary examination testimony to be read to the jury. MRE 804(b)(1); *Dinardo*, 290 Mich App at 287.

## E. CUMULATIVE ERRORS

Defendant Kennard argues that reversal is required because of the cumulative effect of many errors in this case. Any one error standing alone may not justify reversal, but the cumulative effect of several errors can cause sufficient prejudice to warrant reversal. *People v Gaines*, 306 Mich App 289, 321-322; 856 NW2d 222 (2014). To prevail, the defendant must establish actual errors at trial, and the aggregate of the actual errors must lead to unfair prejudice. See *People v LeBlanc*, 465 Mich 575, 591 n 12; 640 NW2d 246 (2002). Because defendant Kennard has failed to demonstrate aggregate errors that cumulatively deprived him of fair trial, this claim of error does not warrant appellate relief.

## F. DEFENDANT KENNARD'S STANDARD 4 BRIEF

Defendant Kennard also raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4, none of which require appellate relief.

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Kennard argues that trial counsel was ineffective for failing to impeach Page with her inconsistent investigative subpoena testimony. He also contends that counsel erred by failing to recall Stitts after Karen White, a probation officer, offered testimony regarding a prior statement she had taken from Stitts. Defendant Kennard argues that counsel should have recalled Stitts to confront him with contradictions in his prior statements. Because defendant Kennard did not raise these claims in a motion for a new trial or request a *Ginther* hearing in the trial court, our review is limited to errors apparent from the record. *Payne*, 285 Mich App at 188.

Although defendant Kennard complains that defense counsel failed to utilize Page's prior investigative interview statements to impeach her testimony, the record discloses that defense counsel had the benefit of the investigative interview at the preliminary examination and did unravel inconsistencies in Page's testimony at the preliminary examination. Further, the prosecutor also explored inconsistencies in Page's testimony at the preliminary examination, and those inconsistencies were made apparent to the jury when Page's preliminary examination testimony was read at trial. Thus, the record does not support this claim of ineffective assistance of counsel.

We also reject defendant Kennard's argument that counsel was ineffective for failing to recall Stitts after Probation Officer White testified. White testified that Stitts gave a statement that omitted witnessing the victim's death and providing the gasoline. White's testimony served the purpose of revealing inconsistencies in Stitts's various accounts of the level of his participation in the events surrounding the victim's death. It was not necessary to recall Stitts merely for the purpose of confronting him with that apparent inconsistency. Moreover, counsel fully explored the many credibility problems with Stitt's testimony. Counsel established conflicts in the evidence regarding the extent of Stitts's participation in the events surrounding

the victim's death, inconsistencies in his different accounts of the events, and elicited that he was charged with the victim's murder, but entered into a plea agreement to a reduced charge of accessory after the fact that allowed him to avoid a penalty of life imprisonment. Stitts's motive to lie was fully disclosed and explored at trial. The fact that counsel did not recall Stitts following White's testimony did not deprive defendant Kennard of a substantial defense. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

## 2. PROSECUTORIAL MISCONDUCT

Defendant Kennard argues that a new trial is required because of the prosecutor's misconduct in knowingly presenting Page's false testimony and in coercing Michael Pokladek's testimony. Neither of these claims were raised at trial. Therefore, they are unpreserved and our review is limited to plain error affecting substantial rights. *Roscoe*, 303 Mich App at 648.

Prosecutors are constitutionally obligated to report to the trial court and the defense when government witnesses lie under oath. *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001). A prosecutor may not knowingly use false testimony to obtain a conviction, and must correct false evidence when it arises. *Id*. Due process requires the prosecutor to correct the false testimony even when it pertains only to the credibility of the individual witness. *People v Wiese*, 425 Mich 448, 453-454; 389 NW2d 866 (1986). But conflicts in a sworn statement are insufficient to meet the burden of establishing perjury, *People v Kozyra*, 219 Mich App 422, 429; 556 NW2d 512 (1996), and a conflict between a witness's trial testimony and earlier statements does not establish that the prosecutor knowingly presented perjured testimony. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). A claim that the prosecutor knowingly presented perjurious testimony is not supported when the prosecutor does not attempt to conceal the contradictions and the defense is given ample opportunity to use the prior statements to impeach the credibility of the witness. *Id*.

Contrary to defendant Kennard's assertions, mere conflicts between Page's trial testimony and her earlier statements do not establish that the prosecutor knowingly presented false or perjured testimony. Moreover, the conflicts were not concealed by the prosecutor, but rather were revealed and explored during her testimony. Accordingly, the record does not support defendant Kennard's assertion that the prosecutor knowingly used false testimony to obtain his conviction.

Defendant Kennard relies on an alleged "affidavit" submitted by Michael Pokladek to support his argument that the prosecutor improperly coerced Pokladek's testimony. Although Pokladek's statement is labeled an affidavit, it is not notarized and, therefore, is invalid. *Detroit Leasing Co v Detroit*, 269 Mich App 233, 236; 713 NW2d 269 (2005). Further, the document mostly contains allegations of conspiracy and forgery involving matters unrelated to defendant Kennard's appeal. The document contains one sentence pertinent to this case, which states that Pokladek's testimony was "given under extreme duress under threats of 'more jail time' and 'contempt of court' and were obviously not given of my own free will." The document does not identify the sources of any threats, and it does not allege that any of Pokladek's trial testimony was not true. It also does not identify any other material testimony that he could have offered. Considering that Pokladek's purported "affidavit" is not sworn, that his reluctance to testify and displeasure at not being offered a deal by the prosecutor for his testimony was disclosed at trial,

that he did not allege that his trial testimony was not true, and he did not identify any other material testimony that he could have offered, this claim of prosecutorial misconduct does not entitle defendant Kennard to appellate relief.

## 3. EXCLUSION OF EVIDENCE

Defendant Kennard also argues that the trial court erred by prohibiting cross-examination regarding Stitts's involvement in an unrelated Grosse Pointe murder, and by excluding evidence that Stitts routinely carried a gun. We disagree. We review a trial court's decision to exclude evidence for an abuse of discretion. *Gursky*, 486 Mich at 606.

On cross-examination, Stitts was questioned regarding the fact that he was initially charged with murder and facing life imprisonment, but pleaded guilty to accessory after the fact, a crime with a five-year maximum prison term. Stitts also testified that he had charges pending in other courts. When asked about a case in Grosse Pointe, Stitts responded that there was "nothing yet." Thereafter, counsel sought to question Stitts about whether he was charged or arrested for a Grosse Pointe murder. Outside the presence of the jury, Stitts testified that he had been questioned about the case, but denied that he had been charged or was a suspect. Stitts also denied being told by anyone that defendant Kennard had given a statement or information implicating Stitts in that case. The trial court thereafter prohibited any additional questioning on this subject. Defendant Kennard argues that the excluded testimony was relevant Stitts's credibility and bias as a witness, and exclusion of this testimony violated his constitutional right of confrontation. We disagree.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Michigan takes a broad approach regarding cross-examination regarding witness bias. *People v Layher*, 464 Mich 756, 768; 631 NW2d 281 (2001). Bias refers to the relationship between a party and a witness that might lead the witness to slant testimony. *Id*. at 763 (citation omitted). "[E]vidence of bias arising from past arrest without conviction is admissible if relevant, as long as its probative value is not substantially outweighed by the danger of unfair prejudice." *Id*. at 768. "A limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998). But there is no right to cross-examine on irrelevant issues. *People v Hackett*, 421 Mich 338, 344; 365 NW2d 120 (1984).

Defendants sought to demonstrate that Stitts was biased against defendant Kennard for implicating Stitts in a Grosse Pointe homicide. Such evidence would have supported an argument that Stitts had a reason to be biased against defendant Kennard, and thus would be relevant to Stitts's credibility. The trial court afforded defendant Kennard an opportunity to question Stitts on a separate record to establish a foundation for the desired testimony, but Stitts denied that he was a suspect in the Grosse Pointe case or being told by anyone that defendant Kennard had implicated him in that case, and defendant Kennard did not present any contrary evidence showing otherwise. Because defendant Kennard failed to establish a foundation for

interjecting this collateral matter for the purpose of showing Stitts's bias against defendants, the trial court did not abuse its discretion in excluding the testimony.

Additionally, the record does not support defendant Kennard's contention that the trial court excluded evidence regarding Stitts's possession of a gun. Upon inquiry by counsel for defendant Kennard, Croskey testified as follows:

> *Q.* Mr. Croskey, you've been around Mr. Stitts on multiple occasions, correct?
>
> *A.* In the past?
>
> *Q.* Yes.
>
> *A.* Yes.
>
> *Q.* You've known him for years?
>
> *A.* Yes.
>
> *Q.* He's been to your house many times?
>
> *A.* Yes.
>
> *Q.* And you've known Mr. Stitts as always carrying a gun?
>
> *A.* Yes.
>
> * * *
>
> *Q.* And in fact, didn't you say that he was the kind of person who let you know that he had a gun on him?
>
> *A.* Yes.

Thus, defendant Kennard's contention that this evidence was excluded is not supported by the record.

## 4. INCONSISTENT VERDICT

Defendant Kennard lastly argues that a new trial is required because the jury's verdicts finding him guilty of first-degree premediated murder, but acquitting him of the firearm charges, are inconsistent. We disagree.

It is well established that, within a single jury trial, inconsistent verdicts are permissible and do not require reversal. *People v Wilson*, 496 Mich 91, 100-101; 852 NW2d 134 (2014). "[J]uries are not held to any rules of logic nor are they required to explain their decisions." *Id.* at 101 (citation omitted). The defendant bears the burden of establishing that inconsistency in a jury's verdicts resulted from confusion, misunderstood instructions, or that the jury engaged in

an impermissible compromise. *People v Putman*, 309 Mich App 240, 251; ___ NW2d ___ (2015).

Here, defendant Kennard acknowledges that he cannot demonstrate juror confusion or impermissible compromise. Moreover, the jury's verdicts are not inherently inconsistent. Evidence indicated that the victim was attacked by three men. It is possible that the jury could not determine the identity of the shooter, but find that defendant Kennard was guilty of aiding and abetting first-degree premediated murder. Accordingly, this issue does not entitle defendant Kennard to appellate relief.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly